1    **LAW OFFICES OF ELIEL CHEMERINSKI**
     ELIEL CHEMERINSKI, ESQ. / Bar No.: 143740

2    **15260 VENTURA BLVD.**
     **SUITE 1810**

3    **SHERMAN OAKS, CA 91403**
     **PHONE: (818) 990-9977**

4    **FAX: (818) 990-9978**

FILED

2014 AUG 14   AM 10: 32

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

5

6    Attorney for Defendant,
     ALIEU B. M. CONTEH

7

8               **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

10

11   James R. Lindsey, as an individual and as
     trustee of the Lindsey Family Trust; William

12   Buck Johns, an individual; Wymont Services
     Limited, a British Virgin Island business

13   entity; and Marc van Antro, all acting
     Derivatively On Behalf of Nominal

14   Defendant African Wireless Inc.

15               Plaintiffs,
     v.

16

17   Alieu B. M. Conteh; Odessa Capital Inc..,
     Dominique Financial, Ltd., OOA ONE, LLC.,

18   OOA TWO, LLC, African Wireless Inc. (As a
     nominal defendant); and Does 1-10

19               Defendants

**Case No.** SACV14-01296 DFM

**[Orange County Superior Court Case No 30-2014-00739428-CU-BT-CJC]**

**DEFENDANT ALIEU B. M. CONTEH'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441 AND 1446 (DIVERSITY)**

20

21 **TO THE HONORABLE COURT, ALL PARTIES HEREIN, AND TO THEIR RESPECTIVE**

22 **ATTORNEYS OF RECORD:**

23      PLEASE TAKE NOTICE that Defendant Alieu B. M. Conteh (**"Conteh"**) hereby removes this

24 action from the Superior Court of the State of California for the County of Orange to the United States

25 District Court for the Central District of California.

26                         **I.**

27               **STATEMENT OF THE CASE**

28      1.     On August 12, 2014, Plaintiffs James R. Lindsey, as an individual and as trustee of the

1   Lindsey Family Trust; William Buck Johns, an individual; Wymont Services Limited, a British Virgin

2   Island business entity; and Marc van Antro, all acting Derivatively On Behalf of Nominal Defendant

3   African Wireless Inc. ("**Plaintiffs**") commenced a civil action in the Superior Court of California for

4   the County of Orange styled *James R. Lindsey v Alieu B. M. Conteh et. al*,. Case No. 30-2014-

5   00739428-CU-BT-VJC.

6       2.      Plaintiffs' action is a Shareholder Derivative action brought on nbehalf of nominal

7   defendant African Wireless Inc. (AWI) against Conteh alleging breach of fiduciary duties.

## II.

## DIVERSITY OF CITIZENSHIP JURISDICTION

10      3.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332 as it is a civil action

11  between citizens of different states and as the matter in controversy exceeds the sum of $75,000,

12  exclusive of interest and costs.

### A. Complete Diversity Exists

14      4. Federal courts have jurisdiction over diversity cases in order to ensure that citizens of different

15  states can adjudicate their dispute in a neutral forum.

16      5. Complete diversity of citizenship exists because plaintiffs Lindsey Family Trust, William

17  Buck Johns and Marc van Antro are citizens of California, and plaintiff Wymont Services Limited is

18  a British Virgin Island business entity, while each  defendant is a citizen of another state or country.

19      6. Defendant Conteh is a resident of the Republic of South Africa, Defendants OOA ONE,

20  LLC., and OOA TWO, LLC are Nevada Limited Liability companies, and Defendant Odessa Capital

21  Inc. and Defendant African Wireless Inc. are Delaware Corporations.

22      7. The Complaint also names Defendants Does 1-10.  Pursuant to 28 USC § 1441(b)(1) , the

23  citizenship of these defendants is disregarded.

### B. The Matter in Controversy is Satisfied

25      8.  Under 28 U.S.C. § 1332(a), the matter in controversy must exceed $75,000. The amount in

26  controversy here exceeds this statutory minimum as among many allegations Plaintiffs allege that

27  Conteh diverted money and shares for his own benefit "in one example, Conteh arranged for VIL to loan

28  $11,500,000 to CWN..., in an abuse of his position as manager of CWN, Conteh stole VIL loan

ELIEL CHEMERINSKI
Attorney at Law
15260 VENTURA BLVD., SUITE 1810
SHERMAN OAKS, CA 91403
(818) 990-9977

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ELIEL CHEMERINSKI**
Attorney at Law
15260 VENTURA BLVD., SUITE 1810
SHERMAN OAKS, CA 91403
(818) 990-9977

# EXHIBIT A

DEFENDANT ALIEU B. M. CONTEH'S NOTICE OF REMOVAL OF ACTION

05266.076\348451v1

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**08/12/2014** at 03:48:55 PM
Clerk of the Superior Court
By Robert Renison, Deputy Clerk

1   ANTON HANDAL (Bar No. 113812)
    anh@handal-law.com
2   PAMELA C. CHALK (Bar No. 216411)
    pchalk@handal-law.com
3   GABRIEL HEDRICK (Bar No. 220649)
    ghedrick@handal-law.com
4   HANDAL & ASSOCIATES
    750 B Street, Suite 2510
5   San Diego, California 92101
    Tel: 619.544.6400
6   Fax: 619.696.0323

7   Attorneys for Plaintiffs: James R. Lindsey, as an individual and as trustee of the Lindsey Family
    Trust; William Buck Johns; Wymont Services Limited; and Marc van Antro, all acting
8   Derivatively On Behalf of Nominal Defendant African Wireless Inc.

9

               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
                  **IN AND FOR THE COUNTY OF ORANGE**
11

12   James R. Lindsey, as an individual and as        Case No. 30-2014-00739428-CU-BT-CJC
     trustee of the Lindsey Family Trust; William
13   Buck Johns, an individual; Wymont Services        **SHAREHOLDER DERIVATIVE**
     Limited, a British Virgin Islands business        **COMPLAINT:**
14   entity; and Marc van Antro, all acting
     Derivatively On Behalf of Nominal Defendant
15   African Wireless Inc.,                            1. **CAL. CORP. CODE SECTION**
                                                          **304 - PRELIMINARY AND**
16                Plaintiff,                               **PERMANENT INJUNCTION**
                                                          **AND TEMPORARY**
17          v.                                            **RESTRAINING ORDER;**

18   Alieu B. M. Conteh; Odessa Capital Inc.;         2. **REMOVAL OF DIRECTOR;**
     Dominique Financial, Ltd., OOA ONE, LLC.,
19   OOA TWO, LLC., African Wireless Inc. (as a       3. **BREACH OF FIDUCIARY**
     nominal defendant); and, Does 1-10,                 **DUTY;**
20
                  Defendants.                          4. **UNJUST ENRICHMENT;**
21
                                                      5. **ACCOUNTING;**
22
                                                      6. **CONVERSION;**
23
                                                      7. **DECLARATORY RELIEF; AND**
24
                                                      8. **CONSTRUCTIVE TRUST**
25
                                                      Judge Thierry Patrick Colaw
26

27

28

         Plaintiffs, James R. Lindsey, as an individual and as trustee of the Lindsey Family

     Trust ("Lindsey"); William Buck Johns ("Johns"); Wymont Services Limited ("Wymont"); and,

     Marc van Antro ("Antro") (collectively referred to hereafter as "Plaintiffs"), all acting

     Derivatively On Behalf of Nominal Defendant African Wireless Inc. by and through their

*HANDAL & ASSOCIATES*
*750 B STREET*
*SUITE 2510*
*SAN DIEGO, CA 92101*
*TEL: 619.544.6400*
*FAX: 619.696.0323*

-1-
*COMPLAINT*

1  undersigned counsel, complain and alleges against Defendants Alieu B. M. Conteh ("Conteh");

2  Odessa Capital Inc. ("Odessa"); Dominique Financial, Ltd. ("Dominique"); OOA ONE, LLC

3  ("OOA-1"); OOA TWO, LLC ("OOA-2"); and, Nominal Defendant African Wireless Inc.

4  ("AWI"); and, Does 1-10 (collectively referred to hereafter referred to as "Defendants") as

5  follows:

6  ## NATURE OF THE ACTION

7      1.     This is a Shareholder Derivative action brought on behalf of nominal defendant

8  AWI against Conteh alleging that this officer and director of AWI breached his fiduciary duties

9  owed to AWI.

10      2.     Plaintiffs, on behalf of AWI, seek monetary damages against and removal of

11  Conteh from management and control of AWI, the infringing officer and director, to remedy his

12  breaches of fiduciary duties to AWI and to protect the interests of AWI.

13      3.     Plaintiffs, on behalf of AWI, also seek injunctive relief to include orders enjoining

14  Conteh from participating as a director or officer of AWI.

15      4.     AWI is a holding company, with its primary asset being its ownership of

16  Congolese Wireless Network, SPRL - a partnership that is involved in the telecommunications

17  business in the Democratic Republic of the Congo (hereafter "Congo").

18      5.     At the present time, Plaintiffs do not know the true names and capacities of the

19  Defendants sued herein as DOES 1 through 10, and therefore sue these Defendants by such

20  fictitious names.  Plaintiffs will seek leave of the court to amend this Complaint to aver their true

21  names and capacities when ascertained.

22      6.     Plaintiffs are informed, believe, and thereupon allege, that each of the Defendants,

23  including the fictitiously named Defendants, were the duly authorized agents of each other, and

24  in doing the things herein mentioned were acting within the course and scope of their agency and

25  employment and that all acts, omissions, breaches, defaults, negligence or other misconduct as

26  alleged in this Complaint were committed with knowledge, permission, and consent of the other

27  Defendants or were subsequently ratified by them, including the fictitiously named Defendants

28  and each of them.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

7.     Upon information and belief, each fictitiously named Defendant is in some manner responsible for the occurrences alleged in this Complaint and proximately caused the damages as alleged herein.

8.     Upon information and belief, at all times herein mentioned, each Defendant acted individually and/or as the successor, agent, co-conspirator, aider, abettor, joint venturer, alter ego, third-party beneficiary, employee, officer, director or representative of the other and, in doing the things hereinafter alleged, acted within the course and scope of such agency, employment or conspiracy and with the consent, permission and authorization of each of the remaining Defendants.  Defendants are liable for the acts of one another, as alleged in this complaint, and are the alter egos of one another. Recognition of the privilege of separate existence would promote injustice because Defendants in bad faith have commingled their assets with one another, have diverted assets from with one another, and have taken other such actions so as to make a unity of ownership and identity amongst them.

9.     Whenever and wherever reference is made in this Complaint to any act or failure to an act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

10.    Each Defendant has sufficient minimum contacts with California, is a citizen of California, or otherwise purposefully availed itself/himself of the benefits of California law, or has property in California, so that the exercise of jurisdiction over each Defendant is consistent with traditional notions of fair play and substantial justice.

11.    The venue of this Court is proper inasmuch as the parties maintain ongoing and continuous contacts with Orange County, California; the transactions giving rise to this action occurred in or had effects in Orange County, California; the acts of the Defendants complained of herein were performed with the intention of causing effects in Orange County, California; and/or, the acts of the Defendants complained of herein were committed in or had effects in Orange County, California.

12.    This Court has personal jurisdiction over each of the Defendants because each

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-3-
*COMPLAINT*

1  Defendant is either a corporation conducting business and maintaining operations in Orange

2  County, California; is an individual who is either present in Orange County, California for

3  jurisdictional purposes; and/or, is a person or entity that has sufficient minimum contact with

4  Orange County, California so as to render the exercise of jurisdiction by this Court permissible

5  under the traditional notions of fair play and substantial justice.

6  ## THE PARTIES AND THEIR RELATIONSHIPS

7  13.    The Lindsey Family Trust is and at all times relevant has been a shareholder of

8  AWI.  At all times necessary to the claims asserted herein, the Lindsey Family Trust has been

9  and is a shareholder of AWI. The Lindsey Family Trust is subject to the jurisdiction of this

10  Court.  Plaintiff, James R. Lindsey ("Lindsey") was and is an individual who resides in the

11  County of Orange, State of California and is subject to the jurisdiction of this Court.  Lindsey

12  was and is the trustee of the Lindsey Family Trust authorized to act on its behalf in this matter.

13  Through the Lindsey Family Trust and related family trusts, Lindsey own and control no less

14  than 12.5% of the voting shares of AWI.  Lindsey is also a member of AWI's board of directors.

15  Lindsey is over the age of 70 and, upon information and belief, is entitled to preference with

16  respect to this action pursuant to Cal. Code Civ. Proc. §36(a) and/or all other applicable

17  provisions of law.

18  14.    William Buck Johns ("Johns") is and at all times relevant has been a shareholder

19  of AWI. Johns holds directly or controls no less than 1% of the outstanding and issued shares of

20  AWI. Johns was and is an individual who resides in Orange County, California.

21  15.    Marc van Antro ("Antro") is and all times relevant has been a shareholder of

22  AWI. Antro holds directly or controls no less than 5.17% of the outstanding and issues shares of

23  AWI. Antro is a citizen of and resident of Brussels, Belgium.

24  16.    Wymont Services Limited ("Wymont") is and at all times relevant has been a

25  shareholder of AWI.  Wymont holds directly or controls no less than 7% of the outstanding and

26  issued shares of AWI.  At all times necessary to the claims asserted herein, Wymont was and is a

27  British Virgin Islands registered Company and at all time material is and has been a shareholder

28  of AWI.

*HANDAL & ASSOCIATES*
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-4-
*COMPLAINT*

17.     Nominal Defendant AWI is a corporation registered under the laws of the State of Delaware, with its headquarters and principal place of business located at 19800 MacArthur Blvd, Suite 1000, Irvine, CA 92612.  AWI has no operations, no sales, and no employees.  AWI does have an office in Irvine and its only tangible assets are cash deposits, papers, files, and corporate record books all of which are maintained at its corporate office in Irvine, California.  Although AWI has no sales or employees, it does primarily conduct its holding company and corporate business in the State of California.  It maintains its books and records in the State of California, has a corporate headquarters in the State of California and holds more than half of its tangible assets in the State of California.  Upon information and belief, the laws of the State of California should and do apply to AWI pursuant to California Corporations Code §2115 and/or all other applicable provisions of law.

18.     Upon information and belief, Defendant Conteh was and is an individual who resides in the State of California and the Country of South Africa.  Conteh is a United States citizen and maintains one or more addresses in the State of California including but not limited to an address located at 1941 Fairburn Ave., Los Angeles, California.  Conteh has and continues to transact substantial and continuing business in this State to include but not limited to acting as an officer and director of AWI, buying real estate, maintaining an address, and signing contracts in and that are subject to California law.

19.     As a result, more than 50% of the shareholders of AWI reside in or maintain addresses in the State of California.

20.     At all times material, Conteh was and is AWI's Chairman of its Board of Directors.  He is and always has been a majority, controlling shareholder, with no less than 68.72% of the voting shares of AWI.  Conteh also controls AWI's board of directors, having the ability to appoint three seats to AWI's 5-member board of directors.  Conteh has at all times relevant dominated control of AWI as its controlling shareholder, officer, and director.  While AWI had and continues to have other directors, they were and are powerless to override any decision made by Conteh.

21.     Defendant Odessa Capital Inc. ("Odessa") is a Delaware corporation registered

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

1   under the laws of the State of Delaware, with its headquarters and principal place of business

2   located at 19800 MacArthur Blvd, Irvine, CA 92612.  Plaintiffs are further informed and believe

3   that Conteh was and is Odessa's sole shareholder.  Plaintiffs thereupon believe and allege that

4   Odessa is Conteh's alter ego and a sham corporation.  Plaintiffs are further informed and believe

5   that Odessa is not in good standing with and/or is not qualified to transact business within the

6   State of Delaware and/or the State of California and thereby lacks the capacity to maintain an

7   action pursuant to applicable provisions of law including but not limited to Cal. Corp. Code

8   §2105.

9        22.    Upon    information    and    belief,    Defendant    Dominique    Financial,    Ltd.,

10  ("Dominique") is an entity whose registration and legal form are not known.  Plaintiffs will seek

11  leave to amend this complaint when they ascertain such information.  Plaintiffs allege that

12  Dominique has and does conduct business in this State and has availed itself to California laws

13  and the jurisdiction of this Court by executing contracts and agreements in and subject to

14  California law.  Plaintiffs are further informed and believe that Conteh was and is Dominique's

15  sole shareholder and there is Conteh's alter ego and a sham corporation.

16       23.    Upon information and belief, Defendant OOA ONE, LLC ("OOA-1") is a Nevada

17  company registered under the laws of the State of Nevada, with its headquarters and principal

18  place of business located at 19800 MacArthur Blvd, Irvine, CA 92612.  Plaintiffs allege that

19  OOA-1 has and does conduct business in this State and has availed itself of California laws.

20  Plaintiffs are further informed and believe that Conteh was and is OOA-1's sole member and

21  thereupon believe and allege that OOA-1 is Conteh's alter ego and a sham company.  Plaintiffs

22  are further informed and believe that OOA-1 is not in good standing with and/or is not qualified

23  to transact business within the State of Nevada and/or the State of California and thereby lacks

24  the capacity to maintain an action pursuant to all applicable provisions of law including but not

25  limited to Cal. Corp. Code §2105.

26       24.    Upon information and belief, Defendant OOA TWO, LLC ("OOA-2") is a

27  Nevada company registered under the laws of the State of Nevada, with its headquarters and

28  principal place of business located at 19800 MacArthur Blvd, Irvine, CA 92612.  Plaintiffs allege

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-6-
**COMPLAINT**

1  that OOA-2 has and does conduct business in this State and has availed itself of California laws.

2  Plaintiffs are further informed and believe that Conteh was and is OOA-2's sole member and

3  thereupon believe and allege that OOA-2 is Conteh's alter ego and a sham company. Plaintiffs

4  are further informed and believe that OOA-2 is not in good standing with and/or is not qualified

5  to transact business within the State of Nevada and/or the State of California and thereby lacks

6  the capacity to defend itself in this action pursuant to all applicable provisions of law including

7  but not limited to Cal. Corp. Code §2105.

8       25.    By virtue of his ownership of a majority of the shares of AWI, Conteh assumed

9  control of AWI by dominating shareholder votes, board seats and executive positions. He has

10  and continues to control and dominate all of AWI's corporate decisions. As a result, Conteh

11  owed and continues to owe AWI and all of its shareholders a fiduciary duty of good faith, trust,

12  loyalty, and due care. In that capacity, Conteh was and is required to use his utmost ability to

13  control and manage AWI in a fair, just, honest, and equitable manner.

14       26.    Conteh must also act in furtherance of the best interests of AWI and all

15  shareholders equally and not in furtherance of his own personal interest or benefit over that of

16  AWI or its other shareholders.

17       27.    To discharge these duties, as an officer and director of AWI, Conteh was required

18  to exercise reasonable and prudent supervision over the management, policies, practices, and

19  controls of AWI, which include, among other things, that he:

20       a.    Ensure that the affairs of AWI were conducted in an efficient, businesslike

21              manner so as to make it possible to provide the highest quality performance of the business;

22       b.    Ensure that AWI was operated in a diligent, honest, and prudent manner and comply with all applicable international, federal and state laws, rules,

23              regulations, and requirements, including acting only within the scope of its legal authority; and,

24       c.    Exercise good faith in supervising the preparation and filing of all audits, reports, and other financial information required by law, including

25              periodic financial statements and reports provided to AWI shareholders, and in examining and evaluating audits, reports, and other information

26              concerning the financial affairs of AWI.

27       28.    Because of his position of control and authority as the controlling director and as

28  an officer of AWI, Conteh was able to and did, directly or indirectly, exercise control over AWI

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-7-
**COMPLAINT**

1    to commit the wrongful acts set out in this Complaint in violation of the fiduciary duties he owed

2    to AWI and its shareholders.

3                    **RELEVANT BACKGROUND FACTS**

4                                 **AWI/CWN**

5        29.      Conteh created African Cable Company, Inc. on or about July 27, 1990 under the

6    laws of the State of Delaware.

7        30.      In August of 1997, African Cable Company applied for a license to operate a

8    GSM cellular network in the Congo.  The application was thereafter assigned to Congolese

9    Wireless Network, SPRL, (hereafter "CWN") a new Congolese company Conteh created on

10    September 19, 1997.  CWN is what is known as a "SPRL" which, under the laws of the Congo,

11    is generally equivalent to what is understood in the State of California to be a "limited

12    partnership." CWN's principal place of business is in the Congo.

13        31.      CWN is principally owned by AWI and another Congolese partnership known as

14    Resotel, SPRL (herein referred to as "Resotel").  AWI owns 60% of CWN and Resotel owns

15    40% of CWN.

16        32.      By virtue of his control of AWI Conteh appointed himself manager of CWN.

17        33.      Plaintiffs are informed and believe that Resotel initially had three members:

18    Feruzi Kalume Nyembwe ("Feruzi") who held 60%, Tukeba Lessa Clement ("Tukeba") who

19    held 30%, and Matama Bamvuidi  ("Matama") who held 10%.

20        34.      On October 7, 1997, the Congolese government awarded CWN a license to

21    operate a GSM cellular network in the Congo, on certain terms and conditions including the

22    payment of a $2,000,000 fee.

23        35.      Two months later, on December 9, 1997, Conteh filed an Amendment to African

24    Cable Company's Delaware Articles of Incorporation to change its name to African Wireless,

25    Inc., the entity identified as AWI herein.

26        36.      Searching for investors, Conteh entered into a Memorandum of Understanding

27    ("MOU") with Lindsey in July 1999.  The MOU provided, among other things, that Lindsey

28    would receive 12.5 % of AWI.  Conteh and Lindsey both signed the MOU in Newport Beach,

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-8-
*COMPLAINT*

1  California on July 13, 1999.

2      37.    On October 30, 2000, AWI entered into a written Shareholder's Agreement.  A

3  true and correct copy of this Shareholder's Agreement is attached hereto as Exhibit "A".

4      38.    Pursuant to the terms of the Shareholder's Agreement, the shareholdings in AWI

5  on October 30, 2000 consisted of the following individuals and share percentages:

| Shareholder | # of Shares | % of Ownership |
|---|---|---|
| Conteh and Dominique Financial, LTD | 3,325.00 | 68.72% |
| Lindsey | 625.00 | 12.92% |
| Donald Segretti | 250.00 | 5.17% |
| Marc Van Antro | 250.00 | 5.17% |
| Buck Johns | 50.00 | 1.03% |
| Wymont Services Ltd. | 338.66 | 7.00% |
| **Total Outstanding Shares** | **4,838.66** | |

12      39.    The Shareholder Agreement gave Conteh the power to appoint a majority of

13  AWI's directors.  It also provided that a quorum, for purposes of a shareholder meeting, would

14  be 70 % of the voting shares.  The Shareholder's Agreement restricted issuances of additional

15  stock, providing that an increase in the number of issued shares could only occur by a way of a

16  "*pro rata* rights offer" at a valuation of no less than $200,000 per 1% of the company.

17      40.    In violation of the express terms of the Shareholder's Agreement, Conteh issued

18  himself an additional 150 shares of AWI stock on November 11, 2002 giving himself over 70%

19  of the shareholdings and voting power over AWI.   No rights offer was extended and Plaintiffs

20  were unaware of, and did not approve this issuance of shares, notwithstanding the fact that they

21  too were directors and shareholders of AWI.  With these additional shares Conteh can, to the

22  exclusion of other shareholders, convene shareholder's meetings by himself since his

23  shareholdings constitute a quorum; and, pass resolutions with a majority on any vote.

24      41.    Moreover, there is no evidence that Conteh paid any consideration for the 150

25  shares in violation of the valuation provisions for shares of AWI in the Shareholder's agreement.

26                      **Resotel**

27      42.    Although a partner in CWN, Plaintiffs are informed and believe that Resotel

28  never had any operations or income and was given a 40% of CWN to satisfy a desire to have

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-9-

***COMPLAINT***

local Congolese ownership in CWN.  On April 5, 2000, the members of Resotel transferred 51 shares (equaling 51%) of Resotel, to AWI.  As a result, as of April 2000, AWI also owned a 51% ownership interest in Resotel's 40% stake in CWN in addition to its 60% stake in CWN. Effectively, in 2000 AWI owned 80% of CWN.

### Vodacom Congo

43.     In 2001, CWN was approached by Vodacom International, Ltd (hereafter "VIL") to buy a partnership interest in CWN's GSM Network license in the Congo.  The negotiations culminated in a signed Joint Venture agreement between CWN and VIL on October 24, 2001, which created a new entity known as Vodacom Congo SPRL (hereafter "VC") for the purpose of VC was for CWN and VIL to own and operate a GSM wireless telephone network in the Congo. The Joint Venture Agreement provided for CWN to own 49% of VC and VIL to own the rest.

44.     Following the execution of the Joint Venture Agreement, the shareholder structure of these companies is represented in the chart below:

|         | AWI     | Resotel | CWN     | VC - JV |
|---------|---------|---------|---------|---------|
| CWN     |         |         | 100.00% | 49.00%  |
| AWI     | 100.00% | 51.00%  | 60.00%  | 39.40%  |
| Resotel | 0.00%   | 100.00% | 40.00%  | 19.60%  |
| Conteh  | 68.72%  | 35.05%  | 55.25%  | 27.07%  |
| Lindsey | 12.92%  | 6.59%   | 10.39%  | 5.09%   |
| Wymont  | 7.00%   | 3.57%   | 5.63%   | 2.76%   |
| Marc    | 5.17%   | 2.64%   | 4.16%   | 2.04%   |
| Johns   | 1.03%   | 0.53%   | 0.83%   | 0.41%   |
| Segretti| 5.17%   | 2.64%   | 4.16%   | 2.04%   |

45.     In an apparent act of self interest, Conteh, immediately after executing the Joint Venture Agreement secretly and in violation of his fiduciary duties to AWI, caused AWI's 51 shares of Resotel to be transferred to Odessa Capital, Inc.  Odessa, however, did not even exist at that time.  The records of the Secretary of State of Delaware show that Conteh did not create Odessa until July 21, 2003.

46.     The net effect of the transfer of these 51 shares from AWI to Conteh/Odessa caused a significant dilution of AWI's interest and an increase in Conteh's interest in CWN as detailed in the chart below:

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-10-

*COMPLAINT*

| | AWI | Resotel | CWN | VC - JV |
|---|---|---|---|---|
| CWN | | | 100.00% | 49.00% |
| AWI | 100.00% | 0.00% | 60.00% | 29.40% |
| Resotel | 0.00% | 100.00% | 40.00% | 19.60% |
| Conteh/Odessa | 68.72% | 51.00% | 61.63% | 30.20% |
| Lindsey | 12.92% | 0.00% | 7.75% | 3.80% |
| Wymont | 7.00% | 0.00% | 4.20% | 2.06% |
| Marc | 5.17% | 0.00% | 3.10% | 1.52% |
| Johns | 1.03% | 0.00% | 0.62% | 0.30% |
| Segretti | 5.17% | 0.00% | 3.10% | 1.52% |

47.    The transfer of AWIs 51 share is a bald-faced breach of Conteh's trust and fiduciary duty owed to AWI and its shareholders.  Conteh took valuable property belonging to AWI for himself and his own personal benefit without authority and without compensation.

48.    Plaintiffs did not learn about Conteh's theft of the 51 shares until 2014.  Plaintiffs are informed and believe Conteh intentionally failed to disclose this transaction to Plaintiffs so as to wrongfully and fraudulently conceal it from them.

49.    The transfer of AWI's shares of Resotel to Odessa increased Conteh's own shareholding in VC to 30.20% from 27.07% and reduced AWI's holdings to 29.40% from 39.40%.

**Abuse of Authority**

**Financial Dealings**

50.    Conteh has failed and refused to provide AWI and its shareholders with an accounting of funds paid to CWN by VC for management and director fees.  Plaintiffs are informed and believe that Conteh has improperly commingled such funds and has converted them for his own use and benefit.

51.    In one example, Conteh arranged for VIL to loan $11,500,000 to CWN, ostensibly for operating capital in 2009.  The written loan agreement dated July 1, 2009 signed by Conteh, specifically provides in Paragraph 2 that the **"loan shall be utilized by the Company for general working capital requirements and for no other purpose."**

52.    In an abuse of his position as manager of CWN, Conteh stole VIL loan proceeds for his own personal benefit, by among other things, causing them to be transferred to his own off shore bank accounts and using them for his own personal purposes in violation of the express

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-11-

*COMPLAINT*

1    terms of the loan agreement.

2         53.    Plaintiffs are informed and believe that Conteh diverted more than half the loan
3    proceeds to himself, Dominique, and Odessa through bank accounts he controls in Switzerland
4    and Belgium.  He did this notwithstanding the fact that neither Dominique nor Odessa had any
5    dealings with CWN and as a result would not be entitled to any of the loan proceeds.  The taking
6    of the money amounts to a theft or embezzlement by Conteh.

7         54.    Plaintiffs are informed and believe that Conteh acted surreptitiously in order to
8    conceal his wrongful, his fraudulent, and/or illegal with respect the to VIL loan funds.

9         55.    Plaintiffs are informed, believe and thereon allege that Conteh's taking of CWN's
10   loan proceeds is a fraudulent commingling, theft and embezzlement of funds from AWI's
11   subsidiary in violation of his fiduciary responsibility to care and safeguard AWI's assets and
12   property.

13        56.    In addition to the foregoing, Conteh has and continues to engage in a pattern of
14   self-dealing and asset manipulation, through his usurping AWI and/or CWN opportunities for
15   himself or his own personal benefit.  In particular, Conteh used his position as a manager of
16   CWN to take for himself at the exclusion of CWN (and thereby AWI) a business opportunity
17   involving a building(s) and owning of cell phone transmission towers and the sale or lease
18   thereof to VC.  Conteh did so without disclosing the opportunity to AWI or CWN.  Plaintiffs are
19   informed and believe that Conteh has derived millions of dollars of personal benefits therefrom
20   which otherwise would belong to AWI and/or CWN.

21        57.    Plaintiffs are also informed and believe that Conteh caused other business
22   opportunities including a cell phone shop businesses (where telephones and SIM cards are sold),
23   to be converted to his own use.  Plaintiffs believe and allege that a shop business, known in the
24   Congo as "2xt", is owned by Conteh and operated by Conteh's son to the exclusion of CWN and
25   AWI.

26        58.    Plaintiffs are informed and believe that Conteh has derived millions of dollars of
27   benefit therefrom which belongs and should flow to AWI and/or CWN.  Conteh did so without
28   disclosing the opportunity to AWI or CWN.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

59.     Also, Plaintiffs are informed and believe that Conteh has stolen several millions of dollars of CWN funds in the nature of double management fee payments and siphoning of fees and expenses, which he used to purchase real and personal assets in the Congo, South Africa, and elsewhere in the World.

60.     In addition to the foregoing, Conteh continually blocked the implementation of valuable business opportunities, including but not limited a money transfer program commonly known as "M-PESA", to the detriment of AWI/CWN in breach of his fiduciary duty.

**Failing to Perform Official Duties**

61.     Conteh, habitually, would fail or willfully refuse to carry out directives or resolutions of AWI's Board of Directors or Shareholders.

62.     On May 30, 2004, the shareholders of AWI held a meeting and passed resolutions unanimously providing that CWN's interest in VC be converted directly to holdings by AWI's shareholders in direct proportion to their percentage ownership.   Such conversion rights are specifically authorized in the Joint Venture Agreement.   A true and correct copy of the minutes from the May 30, 2004 meeting is attached hereto as Exhibit "B".

63.     Notwithstanding this clear mandate, Conteh refused and continues to refuse to carry out the resolution passed by the shareholders and directors of AWI in a blatant disregard of his corporate responsibility to AWI.   This refusal has and continues to cause ongoing harm to AWI.

64.     On May 25, 2007, CWN and VIL entered into a Fourth Amendment to the Joint Venture Agreement that among other things provided for a moratorium on "capital calls".   A capital call is an event where CWN and VIL may have to equally contribute money to VC, thereby increasing their capital stakes.   The Joint Venture Agreement provided that if CWN failed to make its additional capital contribution, VIL could do so on CWN's behalf and increase its share holding of VC at CWN's expense.   Conteh executed the Fourth Amendment, however, failed to perform conditions precedent its enforceability.

65.     VIL made a capital call pursuant to the terms of the Joint Venture Agreement, which would have been adverted, had Conteh put the Fourth Amendment to the Joint Venture

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-13-

*COMPLAINT*

1  Agreement into effect.

2      66.     Since CWN and AWI had no funds to contribute, VIL sought to dilute CWN's

3  share of VC.  Conteh countered VIL's capital call by threatening to dissolve VC for being

4  undercapitalized under Congolese law.

5      67.     Conteh repeatedly refused to negotiate or work out suitable arrangements with

6  VIL over the capital call.  Conteh did so notwithstanding the fact that the capital call issues could

7  have been resolved individually by each of AWI's shareholders to their own satisfaction had

8  Conteh followed through on AWI's May 30, 2004 mandate to convert their AWI shares into pro-

9  rata shares in VC.

10     68.     In addition to the capital call issues; CWN faced a legal obligation to convert

11  from a SPRL to a SARL pursuant to the laws of the Congo, under OHADA.  OHADA is a

12  system of business laws and adopted by seventeen West and Central African nations.  OHADA

13  is the French acronym for "*Organisation pour L'Harmonisation en Afrique du Droit des*

14  *Affaires*", which translates into English as "Organization for the Harmonization of Business Law

15  in Africa".

16     69.     Under OHADA all SPRL entities must convert to SARL entities by September

17  12, 2014.  Plaintiffs are informed and believe that the failure of VC and CWN to convert to a

18  SARL by September 12, 2014 will result in their liquidation under Congolese laws.

19     70.     Notwithstanding his legal obligation to do so, Conteh has failed to pursue

20  conversion of VC or CWN to a SARL.  This is consistent with his threat dissolve VC.

21     71.     Conteh's proverbial "game of chicken" with VIL places VC and CWN at risk for

22  liquidation for no apparent reason except to make some power driven point as to who was in

23  charge and/or for Conteh to maintain and increase his control over CWN and VIL.

24     72.     In response to Conteh's belligerence, VIL declared a breach of the Joint Venture

25  Agreement and initiated arbitration, pulling CWN into arbitration before an ICC Tribunal in

26  Brussels, Belgium on April 7, 2010.

27     73.     In response, Conteh demanded Arbitration, claiming that VIL breached the

28  agreement and sought relief in arbitration including the liquidation of VC.  Conteh, in a clear

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-14-

*COMPLAINT*

breach of his fiduciary duties, pressed for Arbitration despite the fact that he was expressly prohibited under the terms of the Shareholder's Agreement from initiating this type of litigation.

74. Conteh mismanaged the arbitration despite demand by Plaintiffs to cease and desist. As a result, on September 6, 2013 the ICC Tribunal in Case no. 17046/ND/MCP, *Vodacom International, Ltd., v Congolese Wireless Network SPRL* issued an award in VIL's favor (denying all relief sought by CWN) in which it:

a. Concluded that CWN under Conteh's direction committed an abuse of minority position (pages 41 and 43);

b. Appointed an *ad hoc* representative to vote on behalf of CWN at the next Extraordinary Shareholder's Meeting of VC as to the issue of increasing VC's capital and its conversion to an SARL (page 48);

c. Appointed a neutral third party, one Professor, Dirk van Gerven to act as CWN's ad hoc representative; and,

d. Ordered CWN to pay $203,000,000 in damages to VIL.

75. AWI's ownership and right to manage CWN, its sole asset, is now substantially impaired by the Arbitrator's award.

76. In addition to the above, Conteh has and continues to fail to sign VC, CWN and AWI board minutes in dereliction of his fiduciary responsibilities. Such actions have caused CWN to be denied millions of dollars of board fees pursuant to the terms of the Joint Venture Agreement.

### Compliance with OHADA

77. VIL, without Conteh in the way has set a VC board meeting for August 15, 2014 in the Congo, to discuss conversion of VC to a SARL company as required by law. Conteh will not attend the meeting on CWN's behalf for two reasons: A) he was removed as CWN's manager by the ICC Tribunal in its Arbitration Award, and B) he is under threat of being arrested if he returns to the Congo for the white-collar crimes of Forgery and using Forged Documents.

78. As a result, AWI will not be represented at the August 15, 2014 VC meeting where, among other things, Plaintiffs believe that new Articles of Management of VC are on the agenda of the meeting. Unless, the Court removes Conteh AWI will have no representation at this crucial board meeting.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-15-
*COMPLAINT*

79.     There is also a CWN board meeting set for August 30, 2014 in the Congo for the purposes of voting to approve the conversion of CWN to a SA (another form of company that is authorized under OHADA).  Resotel has called the meeting.

80.     Conversion of the CWN's company status requires a vote of the majority of CWN's partners pursuant to its By-Laws.  Given that AWI is the majority owner of CWN, its vote is absolutely necessary.  If the vote fails for whatever reason, CWN's charter will be dissolved and it will lose its legal status, resulting in forced dissolution.

81.     Conteh must therefore immediately be removed from his position of authority and control of AWI so that AWI can reconstitute its board, elect new officers, and thereby participate in the August 2014 VC and CWN meetings in the Congo.

82.     The votes in these meetings cannot be postponed inasmuch as 30 days notice is required for a properly noticed meeting.  Also, such meetings cannot be conducted over the phone or by consent resolution, but only through a properly noticed meeting with the owners personally present in the Congo.

### *Tukeba v. Conteh:*

### **Conteh's Criminal Conviction for Forgery**

83.     In 2012 Tukeba, the former partner in Resotel initiated a criminal action against Conteh in the Congo alleging that Conteh was guilty of using forged documents in connection with the transfer of his partnership share to AWI, suggesting that he did not receive payment for his 30 shares of Resotel.

84.     Following a trial on September 6, 2012, a Congolese *Tribunal de Paix* found Conteh guilty of **forgery and using forged documents**.

85.     The Court found that Conteh committed forgery and used a forged declaration Tukeba purporting to be a receipt of payment for the shares.  A true and correct copy of the Court's decision is attached hereto as Exhibit "C".

86.     Conteh was sentenced to one year in prison. He was also ordered to pay Tukeba $100,000 in restitution.

87.     Conteh appealed the decision to the *Tribunal de Grande Instance*, but the decision

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-16-
*COMPLAINT*

was upheld. On March 9, 2013, Conteh filed another appeal to the *Cour Supreme de Justice,* (Congo's Supreme Court), but it too was rejected. Conteh's conviction was published in the Official Gazette No. 6 of March 15, 2014 in its pages 164 *et seq.*

88.    Consequently, the Court has issued an order for Conteh's immediate arrest. Conteh fled the Congo and is now a fugitive from justice. As a result, he cannot return to the Congo for fear of being incarcerated. Upon information and belief and thereupon alleged, Conteh has no intention of ever returning to the Congo lest he face arrest and imprisonment. Accordingly, Conteh, in addition to being a convicted criminal and a fugitive from justice, is unable to manage the affairs of CWN's business and operations in the Congo.

### *Feruzi v. Conteh*

89.    Since Conteh is a fugitive and thus unable to return to the Congo; Feruzi, on behalf of Resotel, filed another action in the Congo in 2011 seeking an injunction against Conteh's being involved in the management of CWN.

90.    On April 4, 2014, the *Tribunal de Commerce* ruled in Feruzi's favor finding and ordering that among other things to prohibit Conteh from:

      a.   Performing any acts in the name and on the behalf of the company CWN

      b.   Representing CWN within Management and Administration bodies of VC.

91.    Conteh appealed that decision of the *Tribunal de Commerce*, but the decision was upheld by a Congolese court of appeals on June 20, 2013. A true and correct copy of the decision is attached hereto as "D".

92.    As a result, today AWI has had no say in the management of CWN or VC, its primary assets in which it is a significant stakeholder.

93.    Despite being a fugitive from justice, a convicted criminal, and being removed as a manager of CWN by one or more Courts of law, Conteh openly and notoriously continues to act as manager of CWN in defiance of the aforementioned Court orders.

94.    Upon information and belief and thereupon alleged, Conteh has and continues to represent himself to third parties as a manger of CWN with authority to bind it to legal agreements. He does this in spite of one or more Court orders forbidding him from having

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-17-
*COMPLAINT*

1 anything to do with the affairs of CWN.

2  95. Upon information and belief and thereupon alleged, Conteh has as recently as

3 May 12, 2014, among other things, tried to sell CWN to other third parties by executing Non-

4 Disclosure Agreements with Brokers on CWN's behalf.

5  **Conversion of Stock and Dilution of AWI**

6  96. In addition to converting 51 shares of Resotel from AWI to Odessa, Plaintiffs

7 recently discovered that in 2010 Conteh transferred 2 shares (equaling 2%) of CWN from AWI

8 to OOA-1 and OOA-2. Plaintiffs are informed and believe that this transaction personally

9 benefitted Conteh to the detriment of AWI and its shareholders.

10  97. AWI did not find out about the transfer of these shares until August 5, 2014 when

11 Feruzi provided Plaintiffs with the minutes of CWN's meeting concerning the transfer. The

12 minutes show that not only did Resotel object to the transfer, Conteh approved it over Resotel's

13 objection and signed the minutes confirming the transfer himself.

14  98. Plaintiffs are informed and believe Conteh intentionally failed to disclose this

15 transaction to Plaintiffs so as to wrongfully and fraudulently conceal it from them.

16  **General Allegations**

17  99. Plaintiffs bring this action derivatively in the right and for the benefit of AWI to

18 redress injuries suffered and to be suffered, by it as a direct result of the breaches of fiduciary

19 duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment

20 by Conteh.

21  100. Plaintiff asks this Court to do no more than other Courts have already done in

22 removing Conteh from control and management.

23  101. Plaintiffs will adequately and fairly represent AWI's interests in enforcing and

24 prosecuting this case.

25  102. Plaintiffs, in the exercise of reasonable diligence, could not have discovered all

26 of the breaches of fiduciary duty by Conteh complained of herein and facts related thereto at an

27 earlier date despite diligent investigation of the circumstances due to Conteh's intentional and

28 active concealment and failure to disclose one or more relevant facts.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-18-
*COMPLAINT*

103.    It would be futile for Plaintiffs to make a demand on AWI's board of directors to bring suit for and on behalf of AWI since this suit seeks redress against and Conteh.   In effect, Plaintiffs would be asking Conteh for permission for AWI to sue him or entities Conteh has a personal interest in for the wrongful acts complained of herein.

104.    Conteh would not and could not make an objective decision to bring this action inasmuch as he has an interest in the outcome and also an interest in the funds, stock and property illegally he siphoned from CWN.   He cannot therefore reasonably be expected to approve actions to wrest control of AWI's management from him or recover the money he embezzled.

105.    Such a demand is therefore futile and useless for the following reasons:

a.  Conteh, is Chairman, CEO, and inside director of AWI and CWN;

b.  Conteh has demonstrated an ongoing pattern of ignoring shareholder directives, Court orders, and concealing information from shareholders as well as directors of AWI in order to further his own personal interests;

c.  Conteh in his sole discretion is, by virtue of the Shareholder's Agreement, entitled to appoint three of the five members of AWI's board of directors and may thereby vote down any resolutions contrary to his own best interest;

d.  Conteh is legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action, particularly since he is the beneficiary of the actions resulting in the dilution of AWI's minority shareholders, his self-dealing and comingling of AWI funds and assets;

e.  Conteh asserts that he has aggregate control of over 70% of the shares and voting control of AWI.   As the controlling shareholder, officer, and director of AWI (whose own actions are at issue in this lawsuit) Conteh is an interested party and lacks the independence by which he could reasonably or objectively make the decision to proceed with this lawsuit;

f.  Conteh's actions such as: i) hiding the existence of AWI's ownership of Resotel; ii) his issuance of 150 unauthorized shares; iii) failure to account for director and management fees; iv) his criminal conviction; and v) flight from justice are at issue in this lawsuit that cannot be considered an exercise of valid business judgment given that they involve his own criminal, fraudulent, wrongful, and/or deceptive misconduct;

g.  Conteh knew and directly benefitted from the wrongdoing alleged in this Complaint;

h.  Conteh participated in efforts to conceal or disguise the wrongs complained of herein from AWI's stockholders or recklessly or negligently disregarded the wrongs alleged in this complaint and are, therefore, is not a disinterested party;

i.  In order to bring this suit, Conteh would be forced to sue himself and persons  with

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-19-

*COMPLAINT*

whom he has extensive business and personal entanglements, which he will not do, thus excusing demand;

j.   The acts alleged in this Complaint constitute violations of the fiduciary duties owed by AWI's officers and directors, and these acts are incapable of ratification;

k.   Conteh's actions were specifically designed by Conteh to obtain, leverage and maintain control of AWI in his favor and to the detriment of AWI and its shareholders; and/or,

l.   Conteh is a convicted criminal and a fugitive from justice who faces arrest and imprisonment if the authorities locate him.

## FIRST CAUSE OF ACTION: REMOVAL OF DIRECTOR CONTEH

## PRELIMINARY AND PERMANENT INJUNCTION AND TEMPORARY

## RESTRAINING ORDER

## California Corp. Code § 304 and Code Of Civil Procedure § 526

106.   Plaintiffs re-allege and incorporate by reference each of the allegations set forth in paragraphs 1 through 105 above.

107.   Conteh, as the managing director of CWN and as an officer of AWI, is a fiduciary of AWI and its shareholders and owes AWI the highest duties of loyalty, care, candor, good faith, and fair dealing.

108.   Conteh is not able to effectively or otherwise manage the affairs of AWI given that, among other things, a criminal warrant for his arrest has been issued and Conteh has fled the Congo to escape arrest and imprisonment and has been removed from management of AWI's subsidiary, CWN by other Tribunals/Courts.  He is therefore factually and legally incapable of managing AWI's interests in the Congo.

109.   Plaintiffs also believe and allege that Conteh has committed fraudulent, dishonest acts, in a gross abuse his authority with respect to AWI to include:

a.   Wrongfully and in violation of his fiduciary duties issuing AWI stock to himself without authority and in violation of shareholder agreements;

b.   Wrongfully, secretly, and fraudulently causing AWI's interest in Resotel to be transferred to Odessa, a sham company that is 100% owned and controlled by him;

c.   Wrongfully, secretly and fraudulently diluting AWI's interest in CWN by

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-20-

*COMPLAINT*

transferring AWI's CWN stock to OOA-1 and OOA-2; both of which are sham companies that are 100% owned or controlled by him;

d.  Failing and refusing to provide a full and complete accounting of AWI and/or CWN's finances to AWI and its shareholders;

e.  Wrongfully and fraudulently taking for himself and misusing Board Fees and other financial considerations paid by VC;

f.  Wrongfully and fraudulently misusing loan proceeds from VIL that should have been used for CWN operations;

g.  Committing criminal acts of moral turpitude involving forgery and using forged documents resulting in a criminal conviction and the issuance of a warrant for his arrest; and,

h.  Conteh's flight from justice in derogation of the authority of law in Congo has made him unable to manage the affairs of CWN.

110.   Pursuant to California Corporations Code, §2115, this Court is authorized under §304 to remove Conteh from his seat on AWI's board of directors and block his reelection.

111.   Plaintiffs are also entitled to an injunction to enjoin Conteh from participating in management of AWI and CWN under California Civil Procedure Code §526.

112.   In particular, since Conteh's obligations arise out of a fiduciary or trust relationship, there is a substantial and real risk that permitting him to continue to dominate management of AWI and CWN during the litigation would produce waste and/or great irreparable harm to AWI as evidenced by his historical disregard for his fiduciary responsibilities.

113.   Furthermore, permitting Conteh to continue to dominate management of AWI and CWN during the litigation will, among other things, allow Conteh to continue to obstruct the carrying into effect the resolutions passed on May 30, 2004 in violation of the rights of AWI and its shareholders respecting their ownership of AWI and CWN.  The net effect thereof would be to render any future judgment against Conteh ineffectual.

114.   AWI has no adequate remedy at law.  Indeed, monetary damages will not suffice

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-21-
*COMPLAINT*

to compensate for the injuries suffered or to be suffered should Conteh not be removed. In particular, each day that Conteh continues to be in control of AWI is another day that AWI is unable to manage the affairs of CWN in the Congo. Also, each day that Conteh continues to be in control of CWN, brings CWN one day closer to being dissolved in the Congo because of the legal requirement to convert from a SPRL to a SARL. In addition, for each day that Conteh is in control, AWI's duly approved business and shareholder resolutions continue to languish and not be put into effect.

115. Finally, removing Conteh from management would prevent a multiplicity of judicial proceedings resulting from each shareholder of AWI instituting their own private action against him.

116. For these reasons, among others, the harm to AWI is imminent and cannot wait to be resolved following a trial. Conteh needs to be immediately removed from all management positions of AWI so that AWI can appoint effective management who will implement duly approved past board and shareholder resolutions as well as appoint a party to assume managerial control of CWN for the purpose of managing it and effecting the required conversion of CWN to a SARL before September 12, 2014.

117. For all the reasons described herein, Conteh and those acting in concert or on his behalf must be removed from AWI's board of directors pursuant to California Corporations Code §304 and be barred from management of AWI or CWN. They should also be barred from reelecting any person to the office of director for a period of 10 (ten) years or such other period as the Court prescribes.

118. In light of such misconduct by Conteh, Conteh should be removed, pursuant to any and all other applicable provisions of law from any applicable jurisdiction, from the board of directors of the AWI, be barred from management of AWI or CWN, and be barred from reelecting any person to the office of director for a period of 10 (ten) years or such other period as the Court prescribes.

## SECOND CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

119. Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-22-
*COMPLAINT*

1   paragraphs 1 through 118 above.

2   120.   Conteh, as the managing director and as an officer of AWI, is a fiduciary of AWI

3   and its shareholders.  As such, Conteh owes AWI the highest duties of loyalty, care, candor and

4   good faith and fair dealing.

5   121.   By reason of Conteh's positions as an officer, managing director and/or fiduciary

6   of AWI and because of his ability to control the business and corporate affairs of AWI, Conteh

7   owes AWI and its shareholders fiduciary obligations of trust, loyalty, good faith, due care,

8   disclosure, candor, and oversight.  Conteh was and is required to use his utmost ability to control

9   and manage AWI in a fair, just, honest, and equitable manner.

10   122.   Conteh was and is required to act in furtherance of the best interests of AWI and

11   its shareholders so as to benefit all shareholders equally and not in furtherance of his own

12   personal interest or benefit.

13   123.   As a director and officer of AWI, Conteh owed and continues to owe AWI and its

14   shareholders the fiduciary duty to exercise good faith, loyalty, and diligence in the administration

15   of the affairs of AWI and in the use and preservation of its property and assets, and the highest

16   obligations of fair dealing.

17   124.   Because of his position of control and authority as a director and/or officer of

18   AWI, Conteh was able to and did, directly and/or indirectly, exercise control over the wrongful

19   acts complained of herein.

20   125.   Conteh, as controlling shareholder, officer and/or director of AWI, owed and

21   owes to AWI and its shareholders the duties of loyalty, faithfulness, diligence, prudence, and fair

22   dealing.  Conteh has violated his fiduciary duties of care, loyalty, candor, good faith and

23   independence by placing the interests of himself above the interests of AWI and its shareholders.

24   126.   As described more fully above, Conteh has breached these fiduciary duties.

25   127.   In contemplating, planning, and/or effecting the foregoing conduct, Conteh was

26   not acting in good faith toward AWI and breached his fiduciary duties.  Conteh's actions were

27   not a good faith exercise of prudent business judgment to protect and promote the AWI's

28   corporate interests, but rather lined the pockets of Conteh at the expense of and to the detriment

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-23-
*COMPLAINT*

1  of the AWI and its shareholders.

2      128.    As a result of the Conteh's actions, AWI has been and will be damaged in an

3  amount to be proven at trial.

4      129.    As more fully alleged above, Plaintiffs, in the exercise of reasonable diligence,

5  could not have discovered all of the breaches of fiduciary duty by Conteh complained of herein

6  and facts related thereto at an earlier date despite diligent investigation of the circumstances due

7  to Conteh's intentional and active concealment and failure to disclose one or more relevant facts.

8      130.    The acts of Conteh are malicious, oppressive, and done with intent to defraud.  As

9  such Plaintiffs on behalf of AWI are entitled to punitive and exemplary damages in an amount to

10  be shown according to proof at the time of trial.

11          **THIRD CAUSE OF ACTION: UNJUST ENRICHMENT**

12      131.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

13  paragraphs 1 through 130 above.

14      132.    By his wrongful acts and omissions, Conteh was unjustly enriched at the expense

15  of and to the detriment of AWI.

16      133.    Plaintiffs seek, on behalf of AWI, restitution from the Defendants and each of

17  them and seek an order of this Court creating a constructive trust over all of the Defendants'

18  assets and an order for them to disgorge all profits, benefits, and other compensation obtained by

19  them from Conteh's wrongful conduct and fiduciary breaches.

20      134.    Plaintiffs, on behalf of AWI, seek restitution and disgorgement of profits for AWI

21  as well as damages according to proof and any other legally available relief for AWI.

22      135.    As more fully alleged above, Plaintiffs, in the exercise of reasonable diligence,

23  could not have discovered all of the instances of unjust enrichment by Conteh complained of

24  herein and facts related thereto at an earlier date despite diligent investigation of the

25  circumstances due to Conteh's intentional and active concealment and failure to disclose one or

26  more relevant facts.

27          **FOURTH CAUSE OF ACTION: ACCOUNTING**

28      136.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-24-
*COMPLAINT*

1  paragraphs 1 through 135 above.

2      137.   As more fully alleged above, Conteh has and continues to control the financial

3  records of AWI as well as all financial decisions made by or on behalf of AWI as well as its

4  primary asset, CWN.

5      138.   The Bylaws of AWI provide that the financial records, together with all back up

6  documentation, of AWI be open to inspection by any director of AWI upon request, including

7  but not limited to Lindsey.

8      139.   The Bylaws of AWI provide that the Chief Financial Officer of AWI musts render

9  to the directors, including but not limited to Lindsey, an account of all of his transactions and the

10 financial condition of AWI.

11     140.   As more fully alleged above, repeated requests to Conteh by the minority

12 shareholders and/or directors of AWI to include but not limited to Lindsey, to inspect the

13 financial records and books of AWI have been refused.

14     141.   As more fully alleged above, repeated requests to Conteh by the minority

15 shareholders and/or Directors of AWI to include but not limited to Plaintiffs, to provide an

16 accounting of his AWI transactions and the financial condition of AWI have been refused.

17     142.   The shareholders of AWI and/or the other directors of AWI are unable to

18 determine the amounts received and disbursed by AWI and CWN without an accounting of the

19 transactions and dealings of AWI and CWN from their inception to the present.

20     143.   AWI has sustained damages in an amount unknown, which cannot be ascertained

21 without an accounting by Conteh.

22     **FIFTH CAUSE OF ACTION: CONVERSION COUNT ONE**

23     144.   Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

24 paragraphs 1 through 143 above.

25     145.   Conteh caused, without authority, to convert AWI's shares in Resotel to be

26 transferred to his sham corporation, Odessa. In doing so, Conteh and Odessa converted the same

27 for their own use and benefit.

28     146.   These acts were willful, wanton, malicious, and oppressive, were undertaken with

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-25-

*COMPLAINT*

1   the intent to defraud, and justify the awarding of exemplary and punitive damages.

2   147.   As more fully alleged above, Plaintiffs, in the exercise of reasonable diligence,

3   could not have discovered the acts of conversion by Conteh and Odessa complained of herein

4   and facts related thereto at an earlier date despite diligent investigation of the circumstances due

5   to Conteh's intentional and active concealment and failure to disclose one or more relevant facts.

6   148.   No adequate remedy exists at law for the injuries suffered by AWI herein, insofar

7   as further harm will result to AWI and its shareholders from Defendants' wrongful act of

8   conversion absent injunctive relief.

9   149.   If this Court does not grant injunctive relief of the type and for the purpose

10  specified herein, AWI will suffer irreparable injury. Therefore, Plaintiffs on behalf of AWI

11  request an order requiring Defendants to return to AWI its shares in Resotel.

12  ## SIXTH CAUSE OF ACTION: CONVERSION COUNT TWO

13  150.   Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

14  paragraphs 1 through 151 above.

15  151.   These acts were willful, wanton, malicious, and oppressive, were undertaken with

16  the intent to defraud, and justify the awarding of exemplary and punitive damages.

17  152.   No adequate remedy exists at law for the injuries suffered by AWI herein, insofar

18  as further harm will result to AWI and its shareholders from Defendants' wrongful act of

19  conversion absent injunctive relief.

20  153.   If this Court does not grant injunctive relief of the type and for the purpose

21  specified herein, AWI will suffer irreparable injury in the nature of being deprived of the shares

22  of CWN transferred to OOA-1 and OOA-2.

23  ## SEVENTH CAUSE OF ACTION: DECLARATORY RELIEF

24  154.   Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

25  paragraphs 1 through 153 above.

26  155.   An actual controversy has arisen and now exists relating to the rights and duties of

27  the parties herein in that Defendants contend that the transfer of AWI's shares in Resotel to

28  Odessa and CWN's shares to OOA-1 and OOA-2 were proper, whereas Plaintiffs on behalf of

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-26-
*COMPLAINT*

1  AWI contend that the transactions were without authority, fraudulent, and unlawful.

2      156.   Plaintiffs on behalf of AWI desire a judicial determination of AWI's rights and

3  duties, and a declaration as to whether such transfers of were valid, legal, or authorized.

4      157.   A judicial declaration is necessary and appropriate at this time under the

5  circumstances in order that Plaintiffs on behalf of AWI may ascertain AWI's rights with respect

6  to said shares.

7      158.   Plaintiffs have no adequate and speedy remedy to resolve the parties' dispute

8  other than by a declaratory judgment from this court. Because of the urgency and importance of

9  the issues presented by the parties' dispute, it is necessary and appropriate for the court to

10  resolve this dispute by issuing a judicial declaration determining the respective rights and

11  obligations of the parties with respect to the 51 shares of Resotel and the two shares of CWN.

12  **EIGTH CAUSE OF ACTION: CONSTRUCTIVE TRUST**

13      159.   Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

14  paragraphs 1 through 158 above.

15      160.   Upon information and belief and thereupon alleged, Defendants Odessa, Conteh,

16  Dominique, OOA-1, OOA-2 and Does 1-10 are and have been at all times relevant the

17  constructive trustees of shares of Resotel and CWN.

18      161.   Plaintiffs further allege, that said Defendants have wrongfully detained and

19  converted said shares by engaging in the fraudulent conduct alleged herein.

20      162.   Plaintiff, AWI is the rightful owner of the shares as of the date of this Complaint

21  but has been denied access to them by virtue of Defendants' conduct and violations of fiduciary

22  duties.

23      163.   Plaintiffs are entitled to relief in the form of a constructive trust imposed on

24  Defendants pursuant to Cal. Civ. Code §2223.

25  **PRAYER FOR RELIEF**

26      **WHEREFORE**, Plaintiffs pray for relief and judgment as follows:

27      1.   Awarding damages against all Defendants, jointly and severally, in an amount to

28  be proven at trial;

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-27-
*COMPLAINT*

2.      Awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein, and punitive damages;

3.      Awarding appropriate equitable relief;

4.      Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs;

5.      For an order-requiring defendant to show cause, if any, why Defendants should not be enjoined as hereinafter set forth, during the pendency of this action;

6.      For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant Conteh from being on the board of directors of AWI pursuant to California Corp. Code Section 304.

7.      For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

a.      From attending any AWI board meeting;

b.      From attending any CWN board meeting;

c.      From nominating or appointing any person to AWI's board of directors;

d.      From nominating or appointing any person to act as an officer of AWI;

e.      From nominating or appointing any person to CWN's board of directors;

f.      From transferring any of Defendants shares of AWI to anyone;

g.      From participating in management of AWI or CWN in any manner whatsoever;

h.      From executing any contracts for or on behalf of AWI or CWN;

i.      From representing himself as having any authority to legally bind either AWI or CWN;

j.      From voting Defendants shares in AWI in connection with any resolutions for the appointment or election of any AWI board member or executive;

k.      From transferring any shares of Resotel, SPRL to anyone;

l.      From removing or destroying any corporate records, tax returns, bank records, email communications or any other documents related in any way to AWI or

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-28-
*COMPLAINT*

CWN;

m.   From using any letterhead, email accounts, or business cards reflecting Defendants' affiliation with AWI or CWN; and

n.   From transacting with any bank or financial institution concerning or related to AWI or CWN

8.   For a temporary restraining order, a preliminary injunction, and a permanent injunction, commanding Defendant, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

a.   To turn over all books, records, bank accounts, corporate records and/or any other documents related to AWI and CWN; and

b.   Execute, any and all documents of transfer to any bank account to Plaintiff's designee.

9.   For a judgment determining that 51 shares of Resotel, SPRL held by Defendants Capital is held for Plaintiff in trust;

10.   For a declaration that the transfer by Conteh and/or Odessa of AWI's Resotel shares was void, without authority, fraudulent and/or illegal and that those shares rightfully belong to AWI; and,

11.   Awarding such other relief as this Court may deem just and proper.

**HANDAL & ASSOCIATES**

Dated: August 12, 2014

By: _____
Anton N. Handal
Pamela C. Chalk
Gabriel G. Hedrick
Attorneys for Plaintiffs
James R. Lindsey, as an individual and as trustee
of the Lindsey Family Trust; William Buck Johns;
Wymont Services Limited; and Marc van Antro,
all acting Derivatively On Behalf of Nominal
Defendant African Wireless Inc.

HANDAL & ASSOCIATES
750 B STREET
SUITE 2510
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-29-
*COMPLAINT*

# EXHIBIT A

MAR-26-2001 01:28P FROM:                           TO:18006691318           P:1/17

1

# SHAREHOLDER'S AGREEMENT

entered into between

## ALIEU B. M. CONTEH
## DOMINIQUE FINANCIAL, LTD.
## LINDSEY FAMILY TRUST
## JAMES R. LINDSEY, IRA ACCOUNT
## DONALD SEGRETTI
## MARC VAN ANTRO
## WILLIAM BUCK JOHNS
## WYMONT SERVICES, LIMITED

and

## AFRICAN WIRELESS, INC.

(A Delaware Corporation)

October 30, 2000

1

This agreement is made and entered into as of this ___ day of October, 2000, by and between ALIEU B. M. CONTEH, DOMINIQUE FINANCIAL, LTD., LINDSEY FAMILY TRUST, JAMES R. LINDSEY, IRA ACCOUNT, DONALD SEGRETTI, MARC VAN ANTRO, WILLIAM BUCK JOHNS, and WYMONT SERVICES LIMITED (hereinafter referred to collectively as "Shareholders") and African Wireless, Inc., a Delaware corporation.

1.    **INTERPRETATIVE AND PRELIMINARY PROVISIONS.**

The headings of the clauses in this agreement are for the purpose of convenience and reference only and shall not be used in the interpretation of nor modify nor amplify the terms of this agreement nor any clause hereof. Unless a contrary intention clearly appears any one gender includes the other two genders; the singular include the plural and *vice versa;* and natural persons include created entities (corporate or unincorporated) and the state and *vice versa;*

1.1.   The following terms shall have the meanings assigned to them hereunder and cognate expressions shall have corresponding meanings, namely –

1.1.1. "business" means the business of a telecommunication operating company;

1.1.2. "company" means African Wireless, Inc., a limited liability company incorporated under the laws of the State of Delaware, United States of America;

1.1.3. "CONTEH" means Alieu Conteh and Dominique Financial, Ltd.; "LINDSEY" means JAMES LINDSEY and/or any member of his immediate family and/or a trust or retirement plan established for the benefit of Lindsey or his family members, specifically but not limited to LINDSEY FAMILY TRUST and JAMES R. LINDSEY, IRA ACCOUNT;

1.1.5. "CWN" means Congolese Wireless Network, SPRL, a limited liability company incorporated and registered under the laws of the Democratic Republic of Congo, N.R.C. 44143;

1.1.6. "designated loan" means the initial loans made by ALIEU B.M. CONTEH, MARC VAN ANTRO, LINDSEY FAMILY TRUST, JAMES R. LINDSEY, IRA ACCOUNT, and others to the company on terms contained in the Loan Agreements between the company and such parties;

1.1.7. "license" means the licence of concession of public service and telecommunications (LC: No 02/97/GSM) granted by the Ministry of Posts and Telecommunications of the Democratic Republic of Congo in favour of CWN;

ii

TO:18086591318   P:3/17

MAR-24-2001 01:28P FROM:

1.1.8. "shareholders" means the registered shareholders in the company from time to time;

## 2.   RECITALS

Whereas, African Wireless, Inc. (the "company") is incorporated with an authorised share capital of 10,000 (ten thousand) no par common shares;

Whereas, the company is domiciled in California, but the domicile of the company may be changed in due course to a jurisdiction to be mutually agreed to by shareholders holding more than 50% of the shares, and all shareholders who hold more than 5% of the shares, which consent shall not be unreasonable withheld;

Whereas, the shareholders wish to record the terms of their agreement and the basis upon which their relationship as shareholders in the company, will be governed.

Whereas, this agreement shall be of immediate force and effect, is subject to the following condition precedent, namely the company and its shareholders negotiating and entering into a written Stock Buy-sell Agreement.

Whereas, the shareholders of AWI are as follows:

| | |
|---|---|
| ALIEU B. M. CONTEH | 1,650 shares |
| DOMINIQUE FINANCIAL, LTD. | 1,675 shares |
| JAMES R. LINDSEY, IRA Account and | |
| LINDSEY FAMILY TRUST | 625 shares |
| DONALD SEGRETTI | 250 shares |
| MARC VAN ANTRO | 250 shares |
| BUCK JOHNS | 50 shares |
| WYMONT SERVICES LIMITED | 338.66 shares |

NOW THEREFORE, in consideration of the mutual promises, and other valuable consideration, the parties agree as follows:

## 1.   CAPITAL AND LOAN ACCOUNTS

1.1.   The board of directors of the company shall determine the amount of funding required from time to time by the company.

1.2.   Save as may be otherwise determined in writing by shareholders, shareholders' loan accounts against the company shall be subject to the following terms and conditions, namely -

iii

Page iv

1.2.1. shall bear interest at an annual rate to be agreed upon between the shareholders, calculated *pro rata temporis*;

1.2.2. subject to the availability of funds of the company, they shall be repaid as may be agreed from time to time between the company and all its shareholders;

1.2.3. they shall in any event be repaid on the granting of any order (whether provisional or final) placing the company under judicial management or in liquidation;

1.2.4. all repayments by the company to the shareholders shall be made *pro rata* to their respective loan accounts but to the extent that any shareholder's loan account exceeds its *pro rata* share based on its shareholding in the company such excess shall first be repaid. This sub-paragraph shall include, as if the loan was to the Company, of loans by The SAJJONT TRUST and JONTY SANDLER to AFRICAN WIRELESS SA (Proprietary) LIMITED.

1.3.   No loan accounts shall be capitalised without the unanimous approval of all of the shareholders.

## 2.   CONFLICTS WITH MEMORANDUM AND/OR ARTICLES OF ASSOCIATION

If there is any conflict between the provisions of this agreement and the articles of incorporation of the company at any time, the provisions of this agreement shall prevail to the extent permitted by law in the State of Delaware.

The shareholders undertake to take all such steps and do all such things as may be necessary to alter (promptly after the implementation date) the memorandum and articles of association of the company so as to reflect, insofar as may be appropriate, the provisions of this agreement.

## 3.   ISSUE OF SHARES

3.1.   Except for the existing option to WYMONT SERVICES LIMITED no shares in the capital of the company shall be issued other than by way of a *pro rata* rights offer to the holders of all the existing classes of shares at the time, except by agreement by the shareholders; and subject to stock options and warrants of not more than 8% of the authorized capital stock for a technical advisory board ("TAB"). Such options and/or warrants for a technical advisory board shall be at the discretion of the Board of Directors.

iv

MAR-24-2001 01:29P FROM:

3.2.   Except for options and/or warrants that may be issued within the sound discretion of the Board of Directors to members of a technical advisory board, the Company shall not, unless agreed by all shareholders, to issues shares for less than US$200,000 per one (1%) percent capital interest in the Company (taking into account any loan made by such shareholder), on or after the signature date of this Agreement.

3.3.   The parties record and agree that, if the ordinary shares of the company are consolidate and/or sub-divided, the relevant provisions of this agreement shall be deemed to have been adjusted to take such consolidations and/or sub-divisions into account.

## 4.   APPOINTMENT OF DIRECTORS

4.1.     CONTEH  shall for so long as he holds a twenty-five percent of the shares of the company be entitled to elect a majority of the directors of the company.  CONTEH shall be entitled to remove any such director appointed and to replace any such director who is so removed or who ceases for any other reason to be a director of the company;

4.2.     LINDSEY shall for so long as he holds at least 325 shares of the Company, taking into account any consolidation or sub-division of such shares of the company, shall be entitled to elect one (1) non-executive director of the company;

4.3.   WYMONT SERVICES LIMITED shall for so long as it holds at least 325 shares of the Company, taking into account any consolidation or sub-division of such shares of the company, shall be entitled to elect one (1) non-executive director of the company.

4.4.   Any shareholder which disposes of its shares which entitles it to appoint directors shall remove any directors of the company appointed by it as a director of the company without any claims for compensation.

4.5.   Any shareholder who in entitled pursuant to this paragraph 4 to appoint a director(s) to the board of directors may appoint an alternate to each director appointed by him or it; remove any director or alternate so appointed by him or it; and appoint any other person in the place and stead of any director or alternate so removed by him or it, or who does not or fails to remain in office for any reason. The appointment or removal of a director or alternate in terms of this sub-paragraph 4.5 shall be effected by notice in writing from the party appointing such director or alternate to the company and the other shareholders, and shall take effect automatically and immediately upon delivery of such written notice. If this provision is not effective for any reason, the parties undertake to co-operate nevertheless and to exercise their

v

Page vi

respective voting rights of any kind in implementing the intent and import of this sub-paragraph 4.5.

## 5. DIRECTORS MEETINGS

5.1.   The quorum for any director meetings of the company shall be at least 1 (one) director appointed by CONTEH for so long as he is a shareholder in the company, 1 (one) director appointed by LINDSEY for so long as he is a shareholder, and 1 (one) director appointed by WYMONT SERVICES LIMITED for so long as it is a shareholder, provided that if, within 30 (thirty) minutes from the time appointed for a meeting, a quorum is not present, the meeting shall stand adjourned to the same day in the next week, at the same time and place, or, if that day be a public holiday, a Saturday or a Sunday, to the next succeeding day other than a public holiday, a Saturday or a Sunday and if, at such adjourned meeting, a quorum is not present within 30 (thirty) minutes from the time appointed for the meeting, the directors or their alternates then present, provided that they are sufficient to form a quorum in accordance with the provisions of the General Corporation Law of the State of Delaware, shall be a quorum.

5.2.   Directors may attend a directors meeting via a conference call of any nature (video, telephone or other telecommunication medium of appropriate nature).

5.3.   The directors shall meet at least once a quarter.

5.4.   The company shall reimburse a director for all expenses reasonably incurred in attending the directors meetings.

## 6. QUORUM FOR SHAREHOLDERS' MEETINGS

The quorum for shareholders' meetings of the company shall be shareholders representing 70% (seventy per cent) of all the shareholdings, and they must be present in person or by proxy, provided that if, within 30 (thirty) minutes from the time appointed for a meeting, a quorum is not present, the meeting shall stand adjourned to the same day in the next week, at the same time and place or, if that day be a public holiday, a Saturday or a Sunday, to the next succeeding day other than a public holiday, a Saturday or a Sunday and if, at such adjourned meeting, a quorum is not present within 30 (thirty) minutes from the time appointed for the meeting, the shareholders then present in person or by proxy shall be a quorum.  Shareholders may attend a shareholders meeting via a conference call.

vi

MAR-24-2001 01:30P FROM:
TO:18086691318
P:7/17

7.  **PRESIDING PERSON(S)**

7.1.  CONTEH will be appointed as the person to preside as the Chairperson of any shareholders' or directors' meeting during the term of this agreement subject to the right of the shareholders to review his appointment on an annual basis.

8.  **RESOLUTIONS**

8.1.  Resolutions of shareholders of the company (other than resolutions referred to in clause 8.2 which require approval by the shareholders) in order to be of force and effect must be approved by shareholders holding at least 51% (fifty-one per cent) of the shares in the company present at any meeting in person or by proxy.

8.2.  The shareholders agree that the company shall not engage in, agree to, perform or undertake any of the following acts or matters, except as may be approved by shareholders holding at least 75% (seventy-five per cent) of the voting shares of the company, and the directors' powers shall be limited accordingly in respect of -

8.2.1.  the undertaking of any new business activity outside the scope of -

8.2.1.1.  the business of the company at date of signature hereof which shall be telecommunications pursuant to the GSM license issued to the company in the DRC, and additional telecommunications and interest licenses the company is able to obtained;

8.2.1.2.  any other business undertaken by the company hereafter by majority approval or agreement of the shareholders;

8.2.2.  the increase, alteration or reduction of the issued and/or authorised share capital of the company, including the allotment and issue of shares in the company and the authorisation to issue share certificates of the company;

8.2.3.  the undertaking of any act which requires a special resolution of the company to be passed, pursuant to the general corporation law of the State of Delaware;

vii

Page viii

8.2.4.     the conclusion of any contract outside the ordinary courses of the company's business;

8.2.5.     the institution or defence of any legal proceedings other than those arising in the ordinary course of business;

8.2.6.     the issue of any long term or convertible debentures;

8.2.7.     the issue of guarantees or suretyships or indemnities of any unusual nature;

8.2.8.     the creation and modification of mortgages, liens or other charges on the company's assets, except as may be agreed with NORTEL MATRA, S.A., or such other equipment supplier of the company;

8.2.9.     the sale or other disposal of the whole or a substantial part of the business of the company;

8.2.10.    the taking over or acquisition of the whole or a substantial part of the business of any other person or any merger or amalgamation with other companies or with any business which would constitute a material transaction for the company having regard to its assets and business;

8.2.11.    discontinue of any of the material business activities of the company;

8.2.12.    the sale or other disposal of all or a major part of the company's assets;

8.2.13.    the sale or other disposal of any material assets of the company (including but not limited to the goodwill of the company and/or any of its intangible assets) other than in the ordinary course of business;

8.2.14.    the making of any loan to any third party exceeding US$100,000 (one hundred thousand dollars) or to all third parties in the aggregate in excess of $250,000 (two hundred and fifty thousand dollars);

8.2.15.    the amendment of the company's articles of incorporation;

8.2.16.    a compromise generally with the company's creditors;

viii

Page ix

8.2.17.   the winding up of the company or any application for its judicial management;

8.2.18.   the appointment or dismissal of the company's auditor;

8.2.19.   any change in the year-end of the company,

and/or any of the foregoing insofar as it concerns a subsidiary of the company, if any.

8.3.   Resolutions signed in writing by all the directors or shareholders (as the case may be) shall be as valid and effectual as if passed at a meeting of directors or shareholders, as the case may be. The resolution may consist of several documents each signed by one or more shareholders or directors (or their alternates), as the case may be.

## 9.0  DEADLOCK

9.1.   If in terms of the foregoing provisions, the required majority for the passing of a directors' resolution cannot be obtained, such particular resolution only shall cease *ipso facto* to be within the directors' domain and shall be put to the shareholders.

9.2.   If in terms of the foregoing provisions the required majority for the passing of a shareholders' resolution cannot be obtained, a dispute shall be deemed to exist between the shareholders which shall be dealt with as contemplated in clause 9.3. Any such deadlock shall not constitute a ground for the winding-up of the company.

9.3.   If there is a deadlock between the shareholders or directors, as the case may be, as to any resolution proposed, which cannot be resolved, the resolution in question shall fail. Any such failure or deadlock shall not constitute a ground for the winding-up of the company.

## 10.0   BUY-SELL AGREEMENT, PUBLIC OFFERING, and ADDITIONAL TELE-COMMUNICATON ENDEAVORS

10.1.   It is recorded that the shareholders intend to negotiate in good faith -

10.1.1.   a Stock Buy-sell agreement;

10.1.2.   An agreement to create within three years (dependent upon market and business conditions) a public offering for certain percentage interest in the company, which shall be agreed in good faith by the parties.

ix

10.1.3. the parties intend that the company shall endeavour to obtain other telecommunications and internet licenses in Africa and develop businesses thereon.

## 11.0 PRE-EMPTIONS AND TRANSFERS OF SHARES

11.1. Unless otherwise agreed in writing by all the shareholders of the company, a shareholder may only sell or otherwise dispose or transfer of the shares held by it in the company in terms of the Stock Buy-Sell Agreement.

11.2. Subject to the Stock Buy-Sell Agreement, a share may be transferred from -

11.2.1. a shareholder to any other member of that shareholder's family and/or trust and *vice versa*;

## 12.0 DIVIDENDS

Subject to its present and reasonably anticipated future requirements of working and expansion capital and provided that the company does not borrow funds in excess of its funding policy and gearing ratio from time to time to enable it to pay the dividend) the shareholders shall procure that the company shall declare and pay dividends equal to 70% (seventy per cent) of the distributable profits of the company in each of its financial years which declaration and payment shall be made within 60 (sixty) days after the end of each financial year.

## 13.0 MEDIATION:

If any dispute arises between any of the parties in regard to the carrying into effect of any of the parties' rights and obligations arising from this agreement, or the termination or purported termination of this agreement, such parties agree to negotiate with each other in good faith in an effort to resolve such dispute. If such negotiations fail or do not occur within 7 (seven) days after the dispute arises, the dispute shall not become the subject of litigation or arbitration until it has been heard by a mediator unless such action is critical to avoid the prescription of a cause of action or right at law or in order to obtain an interdict, or otherwise to limit any material damage to such party's interests. Such dispute shall be referred to mediation before a mediator within 7 (seven) days after the dispute arises. The mediator shall be appointed by the parties or failing agreement by them as to the mediator, shall be nominated by the chairperson for the time being of an alternative dispute resolution association in Orange County, California, such as JUDICIAL AND MEDIATION SERVICE or an equivalent body in ORANGE COUNTY, CALIFORNIA. The mediation shall terminate upon any one of the disputants withdrawing or the mediator informing the disputants that in the mediator's opinion, no useful

x

MAR-24-2001 01:32P FROM:      - .... ue achieved in continuing the mediation. All communications
made by the disputants to the mediator or to each other during or in
connection with the mediation are made without prejudice to any rights which
they may have and form part of *bona fide* settlement negotiations. The parties
shall keep the mediation proceedings and any order made by the mediator
confidential save to the extent otherwise contemplated herein. The mediator
shall not be compelled by any disputant to disclose any fact learnt in the
course of the mediation in any subsequent legal proceedings which may take
place and the parties waive their right to require the mediator to testify
regarding what transpired in the mediation. The mediator shall -

13.1.   be entitled to communicate and meet with any disputant either in
the presence of the other disputant/s or in private;

13.2.   not disclose any information furnished in confidence by any one
disputant to the mediator, to any other disputant without the prior
consent of the disputant who furnished the information;

13.3.   act impartially and disclose to the disputants any relationship or
dealings which the mediator may have had with any of the
disputants;

13.4.   not make any decision, which is binding upon the disputants, the
resolution of the dispute depending entirely upon the disputants
achieving agreement in respect thereof.

## 14.0  ARBITRATION

14.1.   Save in respect of those provisions of the agreement which
provide for their own remedies, which would be incompatible with
arbitration, a dispute that arises in regard to -

14.1.1.   the interpretation of;  or

14.1.2.   the carrying into effect of;  or

14.1.3.   any of the parties' rights and obligations arising from;
or

14.1.4.   the termination or purported termination of or arising
from the termination of;  or

14.1.5.   the rectification or proposed rectification of

this agreement, or out of or pursuant to this agreement or on any
matter which in terms of this agreement requires agreement by the
parties, (other than where an interdict is sought or urgent relief

xi

Page xii

may be obtained from a court of competent jurisdiction), shall be submitted to and decided by arbitration.

14.2.  That arbitration shall be held with only the parties and their representatives other than legal representatives, present thereat at Los Angeles, California. It is the intention that the arbitration shall, where possible, be held and concluded in 45 (forty-five) working days after it has been demanded. The parties shall use their best endeavours to procure the expeditious completion of the arbitration.

14.3.  Save as expressly provided in this agreement to the contrary, the arbitration shall be subject to the arbitration legislation for the time being in force in California.

14.4.  The arbitrators shall be –

14.4.1.  an impartial practising attorney of not less than 12 (twelve) years standing appointed by the parties or, failing agreement by the parties within 10 (ten) days after the arbitration has been demanded, at the request of either of the parties shall be nominated by the President for the time being of the registered bar of the practising attorneys. If that person fails or refuses to make the nomination, either party may approach the court of competent jurisdiction in Orange County, California to make such an appointment. To the extent necessary, the court is expressly empowered to do so; alternatively

14.4.2.  if the quantum of the dispute is in excess of US$500 000,00 (five hundred thousand dollars) or is of a critical importance to the business, the dispute shall be referred to a panel of 3 (three) arbitrators to be appointed by the American Arbitration Association in Los Angeles, California

14.5.  The parties shall keep the evidence in the arbitration proceedings and any order made by any arbitrator confidential unless otherwise contemplated herein.

14.6.  The arbitrator shall be obliged to give his award in writing fully supported by reasons.

14.7.  The arbitrator shall have the power to give default judgement if any party fails to make submissions on due date and/or fails to appear at the arbitration.

xii



## 15.0  PUBLIC LISTING

15.1. If shareholders holding seventy-five (75%) per cent, or more, of the shares of the company are in agreement that the company is to be listed, whether directly or indirectly, on any recognized stock exchange then, notwithstanding anything to the contrary contained in this agreement or the company's memorandum or articles of incorporation, from time to time, each of the shareholders undertakes to do whatever is required of it/him to ensure such successful listing of the company.

15.2. The listing of the company shall take place on the basis that the rate of the share exchange of the relevant interest of the shareholders of the company for such listed shares shall be at consistent with maximising the long-term value of the shareholders interest, and with consultation with experts.

## 16.0.  COME ALONG AND TAG ALONG

16.1. If shareholders who hold not less than ninety (90%) per cent of the issued shares of the company receive an offer from a bona fide third party ("the third party offer") for the purchase of the company's entire issued shares, the majority holders shall be entitled to require the company's other shareholders, who shall then be obliged, to join with the majority shareholders in accepting the third party offer, in respect to the entire issued shares of the company and implementing the sale arising therefrom.

16.2. If the majority shareholders receive an offer from a bona fide third party for the purchase of the entire issued shares of the company or the majority thereof and the majority holders wish to accept such offer, they shall forthwith advise the other shareholders thereof, whereupon the other shareholders shall be entitled to require the majority shareholders, by giving written notice to them, to procure the simultaneous sale of all or a pro-rata proportion, as the case may be, of the shareholding in the company to that third party as part of the same transaction on like terms and conditions and the same price per share.

## 17.0  SUBMISSION TO JURISDICTION

xiii

TO:18086691318          P:14/17
TO:0112111c861333         P:16/20

MAR-24-2001 01:33P FROM:

*Page xiv*

The parties agree that any legal action or proceedings arising out of or in connection with this agreement may be brought in Orange County, California and irrevocably submit to the non-exclusive jurisdiction of such courts.   Each appoints any person (at the address chosen as its *domicilium citandi et executandi*) to receive for and on its behalf service of process in such jurisdiction in any legal action or proceedings with respect to this agreement.  The parties irrevocably waive any objection they may now or hereafter have that such action or proceeding has been brought in an inconvenient forum.  Nothing herein shall affect the right to serve process in any manner permitted by law.

## 18.0   NOTICES

18.1.  Notices or other documents or communications of whatsoever nature (including the exercise of any option), shall be given to shareholders at the following addresses :

    18.1.1.  ALIEU B.M. CONTEH for ALIEU B. M. CONTEH and DOMINIQUE FINANCIAL, LTD.

        Physical:   Avenue du Commerce 42
                      BP 15915
                      a Kinshasa - Gombe

        Postal:    Avenue du Commerce 42
                      BP 15915
                      a Kinshasa - Gombe

        Telefax:  +212 376 9369

    18.1.2.  AFRICAN WIRELESS INC

        Physical:   ATTN:  Donald Segretti
                      650 Town Center Drive, 6th Floor
                      Costa Mesa, California 92626
                      United States of America

        Postal:    As above

        Telefax:  (091) 714 662-2200

    18.1.3.  JAMES LINDSEY for LINDSEY FAMILY TRUST and JAMES R. LINDSEY, IRA ACCOUNT

        Physical:   1392 Faren Drive

                xiv

Jim Lindsey

MAR-24-2001 01:33P FROM:

TO:10086691318          P:15/17
TU:01127112861333       P:17/20

Santa Ana, CA 92705          Page xv
United States of America

Postal:     As above

Telefax:    (091) 714 731-7685

18.1.4.   WYMONT SERVICES LIMITED

Physical:

Postal:

Telefax:

18.1.5.   DONALD SEGRETTI

Physical:   2711 Point del Mar
            Corona del Mar, CA  92625
            U.S.A.

Postal:     same as above

Telefax:    (091) 714 662-2200

18.1.6.   MARC VAN ANTRO

Physical:

Postal:     same as above

Telefax:

18.1.7.   WILLIAM BUCK JOHNS

Physical:   3501 Jamboree Road
            South Tower, Suite 606
            Newport Beach, CA  92660

Postal:     same as above

xv

18.2. Any notice or communication required or permitted to be given in terms of this agreement shall be valid and effective only if in writing but it shall be competent to give notice by telefax.

18.3. Any party may by notice to any other party change the physical address and telefax number chosen for notice, provided that the change shall become effective *vis-à-vis* that addressee on the 5th business day from the receipt of the notice by the addressee.

## 19.0 SEVERABILITY

Any provision in this agreement which is or may become illegal, invalid or unenforceable in any jurisdiction affected by this agreement shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability and shall be treated *pro non scripto* and severed from the balance of this agreement, without invalidating the remaining provisions of this agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

## 20.0 GOVERNING LAW

The interpretation, implementation and termination of this contract will be in accordance with the substantive laws of the State of Delaware, which shall, for all purposes of this contract, be the governing law of this contract.

## 21.0 CORPORATE OPPORTUNITIES

In relation to the business (as defined), and in Africa only, the shareholders agree that the directors and/or shareholders (and, for the purposes of this clause 21 only, notwithstanding the registered holder of any shares may deal with the company or each other on an arm's length basis, and shall have preference in dealing with the company so long as any such dealings offer comparable services and pricing as other providers of the same or substantially similar services or products.

## 22.0 COUNTERPARTS AND FAX SIGNATURES

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facmile shall be as binding as the original.

xvi

VA\SR\31\12/00
AGR\WIRELESS.SHARE ADD3\D\AN

# ADDENDUM TO AGREEMENT

ENTERED INTO ON 31 OCTOBER 2000 ("the agreement")

between

**ALIEU B.M. CONTEH**
**DOMINIQUE FINANCIAL, LTD**
**LINDSEY FAMILY TRUST**
**JAMES R. LINDSEY, IRA ACCOUNT**
**DONALD SEGRETTI**
**MARC VAN ANTRO**
**WILLIAM BUCK JOHNS**
**WYMONT SERVICES, LIMITED**

and

**AFRICAN WIRELESS, INC**

1       The agreement is hereby amended as follows –

1.1        the following new paragraph shall be inserted as a further recital in clause
           2 of the introductory clause of the agreement –

               "Whereas the parties shall procure that as soon as possible after the
               signature date hereof, the issued share capital of the company be
               increased so as to eliminate any fractions of shares held by any
               shareholder, without affecting the percentages of shares held by each
               party referred to above."

1.2        clause 1.2.4 shall be amended to read as follows –

               "all repayments by the company to the shareholders –

                   1.2.4.1        shall be made pro rata to their respective loan accounts
                                  but to the extent that any shareholder's loan account
                                  exceeds its pro rata share based on its shareholding in

the company, such excess shall first be repaid. If any repayment of a loan account of any shareholder is made in terms of a promissory note issued to such shareholder by the company, all shareholders shall be repaid a pro rata portion of their loans to the company. This sub-paragraph shall also apply to the loan by the Sanjont Trust to the African Wireless Networks SA (Proprietary) Limited, as if the loan was a loan made to the company, and the company shall procure that repayment of that loan be effected in terms of this sub-paragraph. The provisions of this sub-paragraph are for the benefit of the Sanjont Trust. Wymont Services Limited warrants that it is authorised to accept such benefit on behalf of the Sanjont Trust and hereby accepts the benefits on behalf of the Sanjont Trust.

1.3     clauses 3.1 and 3.2 shall be amended to read as follows –

    "3.1     Except for the existing option to Wymont Services Limited no shares in the capital of the company shall be issued without the unanimous approval of all shareholders and other than by way of a pro rata rights offer to holders of all the existing classes of shares at the time.

    3.2     The company shall not, unless agreed by all the shareholders, issue shares for less than US$200 000 per one (1) percent capital interest in the company (taking into account any loan made by such shareholder), on or after the signature date of this agreement."

1.4     the following new clause 5.6 shall be inserted after the existing clause 5.4 –

    "5.6     All directors of the company shall be entitled to require that matters be placed on an agenda and that such an agenda to be considered at board meetings".

1.5     by deeming any other applicable provision of the agreement to have been amended consequentially insofar as may be necessary to take into account the revised clauses set out above in this addendum.

2     The provisions of this addendum shall form part of and shall be regarded as having been incorporated in the agreement from the outset.

3     This agreement may be executed in a number of counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

4     In all other respects, the provisions of the agreement remain unchanged.

MAR-24-2001 01:34P FROM:          TO:18006691318    P:17/17

## 23.0 LEGAL COSTS

Page xvii

The company shall pay the reasonable legal costs and expenses on behalf of the company. All other parties shall bear their own legal costs and expenses with respect to this agreement and associated agreements.

EXECUTED THIS ___ day of October, 2000 at the locations stated below.

DATED: October 31, 2000

Alieu B.M. Conteh

DATED: October ____, 2000

LINDSEY FAMILY TRUST

by _____
James Lindsey, Trustee

DATED: October ___, 2000

JAMES R. LINDSEY, IRA ACCOUNT

By: _____
James R. Lindsey, Trustee

DATED: October 30, 2000

Donald Seyfried

DATED: October 31, 2000

Marc Van Antro

DATED: October ____, 2000

_____
William Buck Johns

DATED: October ____, 2000    1st November

For WYMONT SERVICES LIMITED

By: _____

(Additional Signatures Next Page)

xvii

# EXHIBIT B

FROM :                     FAX NO. :9495538188          Mar. 03 2005 06:03PM P2/13

Exhibit K - May 30 2004 AWI Meeting Minutes.pdf

## MINUTES OF THE REGULAR

## JOINT MEETING OF

## BOARD OF DIRECTORS AND SHAREHOLDERS OF

## AFRICAN WIRELESS, INC.

A regular joint meeting of the board of directors and shareholders of AFRICAN WIRELESS, INC., a Delaware corporation, (including its subsidiary African Wireless Pty., a South African corporation) was held on May 29th and 30th, 2004 at the offices of Kanuman Resources Pty, Ltd. in Sandton, South Africa (May 29th), and at the business and residence of Jonty Sandler, South Africa (May 30, 2004) (hereinafter collectively the "meeting").

The following director(s) were present at the meeting as indicated:

### DIRECTOR(S)

| | |
|---|---|
| Alieu B. M. Conteh | Present |
| James Lindsey | Present |
| Donald Segretti | Present |
| Jonty Sandler | Present |
| Mark Van Antro | Present |

The following director(s) were absent from the meeting:

NONE

The following persons also were present by telephone or in person:

May 29, 2004 – NONE
May 30, 2004 – Bob Schur, Esq.

All the directors of African Wireless, Inc. are also directors of African Wireless Pty, Ltd, the South African company.

The following shareholders were present at the meeting, in person or via proxy:

1

Exhibit K - May 30 2004 AWI Meeting Minutes.pdf

## SHAREHOLDERS

| | |
|---|---|
| Allen B.M. Conteh | Present |
| Dominique Financial | Present/represented by Mr. Conteh |
| James Lindsey, IRA trust | Present/represented by Mr. Lindsey |
| And James R. Lindsey Family Trust | Present/represented by Mr. Lindsey |
| Donald Segretti | Present |
| Wymont Trust | Present/represented by Mr. Jonty |
| Mark Van Antro | Present |
| Buck Johns | Present via proxy to Mr. Lindsey |

The Chairman, Allen Conteh, called the joint meeting to order and announced that a quorum was present and that the meeting was held pursuant to a written notice via e-mail of the meeting given to all directors and shareholders of the corporation. All directors were present, and all shareholders were present in person, or via proxy. Buck Johns, a 1% shareholder of AWI was present though the proxy held by James Lindsey. An agenda of items to be discussed was presented prior to the meeting to all directors and shareholders, and is attached hereto.

It was then moved, seconded, and unanimously resolved to dispense with the reading of the minutes of the last meeting.

The Chairman then commenced discussion on May 29, 2004 at the meeting in his company's offices in Sandton regarding the lawsuits against the corporation by Jim Lindsey and Mr. Sandler's trust, Sanjon/Wymont Trust. There are pending two separate lawsuits, one by Mr. Lindsey filed in California, and the other by the Sanjon/Wymont Trust by Mr. Jonty in South Africa against African Wireless Pty. The lawsuits were based upon notes of the corporation AWI to Mr. Lindsey's entities; and by African Wireless Pty. by the Sanjon/Wymont Trust notes and interest deposit requirements. The Chairman stated that the companies need additional funding and that he desires to request funds from the third parties. After discussions by each board member, the following resolution was proposed by Donald Segretti, seconded by Mr. Lindsey:

RESOLVED:

The companies, African Wireless, Inc. and African Wireless Pty. shall seek additional funding from third parties and/or negotiate with Vodacom so that sufficient funds will be available to pay-off the outstanding notes and other debts of the corporations.

IT WAS FURTHER RESOLVED, that AWI shall have CWN seek valuation of CWN's shares in the Joint Venture entitled Vodacom – Congo, and market sufficient interest in the Joint Venture to pay off corporate loans of CWN's majority owner, AWI, and AWI's subsidiary African Wireless Pty.

2

Exhibit K - May 30 2004 AWI Meeting Minutes.pdf

In return for this commitment the two lawsuits by shareholders, one by James Lindsey and the other by Sanjon/Wymont Trust represented by Jonty Sandler shall be dismissed, and all litigation shall be stayed. Both James Lindsey and Jonty Sandler agreed to this resolution.

The Board further resolved to delegate the authority to the Chairman, Mr. Alieu Conteh, to make all arrangements for the funds required, and the signing of any agreement(s), as may be necessary.

The Board discussion that the fair market value of shares of the Corporation is difficult to ascertained, but estimated at US$500,000+ per 1%.

After frank discussions, all parties voted in favor of the resolution, and it was passed unanimously. The resolution passed and a copy was ordered inserted into the minute book.

The Chairman then discussed the issue of the sale of 2XT by the corporation. After discussions, the following resolution was proposed by the Chairman and seconded by James Lindsey:

RESOLVED:

The company, African Wireless, Inc. shall sell immediately its 90% ownership in 2XT to Alieu Conteh on the following terms and conditions:

Alieu Conteh will take over the business in DRC known as 2XT. Mr. Conteh will assume the debt with Vodacom, and take over final account and responsibility for the personnel of 2XT. This liability is estimated at US$112,142.00. CWN and AWI will settle certain remaining debts of 2XT, to a maximum amount of US$100,000.00.

After discussion, and consideration that all directors, except Jonty Sandler, the board approved confirmed the resolution by round robin on December 10, 2003, when an earlier vote was taken. Mr. Conteh abstained. All other directors, except Mr. Sandler, who did not vote, voted in favor of the resolution. The resolution passed.

At the end of the day of May 29, 2004, the meeting was continued until the next day at Mr. Jonty's farm, just outside of Johannesburg.

On May 30, 2004 the joint meeting reconvened, with the same parties present, with Mr. Schur who joined the meeting.

There were lengthy discussions and resolutions were drafted, presented and seconded, and signed by all parties regarding exchange of AWI shares for those in CWN, a copy of which is attached. The resolution passed.

3

In addition, there was also a resolution presented, and seconded regarding the mandatory conversion ratio of all shareholders loans to equity in AWI or African Wireless Pty., depending upon which entity the loans were made. In additional words, if the loan was to AWI, such lending party would obtain an addition equity share of AWI. All parties voted for the resolution, except Mr. Sandler, who did not vote. The dilution share ratio shall also be shared proportionately with all shareholders of CWN. A copy of the resolution is attached. The resolution passed.

Further, there was a resolution presented, and seconded regarding the distribution of and priority of payment of funds received by AWI and CWN, including the salary of Mr. Conteh. It was passed with all parties voting in favor, except for Mr. Sandler, who did not vote. A copy of the resolution is attached. The resolution passed.

There being no further business to come before the meeting, on motion duly made, seconded, and adopted, the meeting was adjourned.

DATED: April ____, 2004

DONALD SEGRETH
Secretary

4

Exhibit K - May 30 2004 AWI Meeting Minutes.pdf

RESOLUTIONS OF THE BOARD OF DIRECTORS
OF
AFRICAN WIRELESS, INC.

The following persons, being all the directors of African Wireless, Inc., a Delaware corporation, and upon unanimous consent at a regular board meeting held on May 30, 2004, pursuant to regular notice, do hereby set forth the following as the approved resolutions of the Board of Directors, as follows:

WHEREBY: Congolese Wireless Network, sprl owns forty-nine percent of Vodacom Congo (RDC) sprl; and,

WHEREBY: African Wireless, Inc., a Delaware corporation ("AWI"), owns sixty percent of Congolese Wireless Network, sprl; and,

WHEREAS: It is in the best interest of African Wireless, Inc and Congolese Wireless Network, sprl that funds anticipated to be received from VODACOM – CONGO in directors' and/or other fees shall be distributed as follows in the following priorities, and the Secretary of AWI shall direct that CWN shall make the following distributions in the following priorities:

1.  The salary of Alien B.M. Conteh in the approximate amount of $150,000;
2.  The most recent loans made by AWI's shareholders to assist AWI with current debts, in the approximately amount of $153,000, plus interest at 12%;
3.  Tax liability in DRC of $250,000;
4.  Expenses of Board members for the past 18 months, estimated at $70,000;
5.  Payment to PriceWaterHouse to complete audit, estimated at $70,000;
6.  Professional fees outstanding of Kevin, Robert Schur, R. Martin, and Donald Segretti, estimated at $165,000;
7.  Final salaries of redundant employees of CWN and back pay due, estimated at $70,000; and
8.  Delott & Touche fees, estimated at $50,000.

1

FROM :                                    FAX NO. :9495538188            Mar. 03 2005 06:05PM P11/13

Exhibit K - May 30 2004 AWI Meeting Minutes.pdf

RESOLUTION OF AWI
May 30, 2004
Disbursement and Priority of Funds

     The secretary of the corporation is directed to insert the original of this resolution
in the Minute Book of the Corporation.

DATED: _4/31/04_

_____
ALIEU B. M. CONTEH, Director

_____
DONALD SEGRETTI, Director

_____
MARK VAN ANTRO, Director

_____
JAMES LINDSEY, Director

_____
JONTY SANDLER, Director

2

RESOLUTIONS OF THE BOARD OF DIRECTORS
OF
AFRICAN WIRELESS, INC.

The following persons, being all the directors of African Wireless, Inc., a Delaware corporation, and upon unanimous consent at a regular board meeting held on May 30, 2004, pursuant to regular notice, do hereby set forth the following as the approved resolutions of the Board of Directors, as follows:

WHEREBY: Congolese Wireless Network, sprl owns forty-nine percent of Vodacom Congo (RDC) sprl; and,

WHEREBY: African Wireless, Inc., a Delaware corporation ("AWI"), owns sixty percent of Congolese Wireless Network, sprl; and,

WHEREAS: It is in the best interest of African Wireless, Inc and Congolese Wireless Network, sprl that African Wireless, Inc. and/or its individual shareholders directly control their pro-rata portion of ownership interest in CWN or Vodacom Congo ("RDC") sprl, in exchange for their individual ownership as shareholders AWI or CWN.

THEREFORE; After discussions and comments the following resolution is hereby passed by unanimous vote:

RESOLVED: The secretary of this corporation is hereby directed to mandate CWN to engage Vodacom Congo (RDC) sprl to reissue and exchange certain shares previously issued to Congolese Wireless Network to Congolese Wireless Network Affiliates ("CWN Affiliates"), without restrictions and with the same rights, obligations, and privileges as the current certificates now being held by shareholders of CWN; and,

FURTHER RESOLVED; The secretary of AWI is directed to notify all shareholders of record, that they may elect to exchange their shares on a pro rata basis with CWN, and thereafter may request the secretary of CWN to request that Vodacom – Congo cancel such shares in CWN and reissue and exchange such shares to the CWN Affiliates who elect to be Vodacom – Congo shareholders, and

FURTHER RESOLVED: The secretary, or his designee(s), are hereby authorized to execute all documents necessary and proper to accomplish the above exchange of shares;

FURTHER RESOLVED, that the put-option rights of CWN shares, shall be transferred pro rata to such CWN affiliate's shares as may be issued by Vodacom – Congo; and if such right are not attached to Vodacom-Congo shares, such shares shall have maintain such pro-rata rights; and,

FURTHER RESOLVED, the Chairman Alieu Conteh will chair a process to reach a mandatory conversion of all shareholder loans to equity in AWI. Such parties

Exhibit "A"

1

shall exercise good faith in resolving this matter. The conversion rate will be based upon either a rate negotiated in good faith by the parties, or if they cannot agree to the fair market value, to have a binding process to arrive at a fair market value conversion rate using the method used in section 12.2.3 of the joint venture agreement. AWI holds shares of CWN, which in turn holds shares in Vodacom – Congo. The above, and all rights of shareholders in AWI shall be considered in arriving at a fair market value for the conversation rate.

FURTHER RESOLVED, the Chairman is directed to approach Vodacom – Congo with implementation of this Resolution, and to retain, any and all professional advisors, where ever located in the world.

FURTHER RESOLVED, this resolution is conditioned upon the exchange of CWN affiliate shares, after exchange from AWI shares, in Vodacom-Congo.

Following the above resolutions being passed unanimously, the board considered the following resolution, which was passed by a majority of the members of the Board of Directors, James Lindsey voting against:

RESOLVED, that the Chairman, Alieu B.M. Conteh is authorized and directed to commence the process of a public offering of forty (40%) percent of the shares of CWN; and

IT IS FURTHER RESOLVED, that the details of any such public offer, to include, but not limited to pricing of such shares, shall be subject to further board and shareholder approval; and,

IT IS FURTHER RESOLVED, that any shares so offered shall be made propionate to all shareholdings in CWN.

The secretary of the corporation is directed to insert the original of this resolution in the Minute Book of the Corporation.


DATED: 5/28/04

_____
ALIEU B. M. CONTEH, Director

_____
DONALD SEGRETTI, Director

_____
MARK VAN ANTRO, Director

_____
JAMES LINDSEY, Director

_____
JONTY SANDLER, Director


2

# EXHIBIT C

ŗ

THE KINSHASA/GOMBE MAGISTRATES COURT OF CRIMINAL AFFAIRS
ISSUED THE FOLLOWING RULING:

RP. 2259/CD/II  **COPY**  <u>FIRST</u>
PAGE

PUBLIC HEARING OF SIXTH SEPTEMBER TWO THOUSAND AND
TWELVE;

PROSECUTOR:  MP & PC Mr TUKEBA LESSA KIMPUNI Clément,
residing at No. 4825 COMMITY CIRCLE DRIVE,
Appt. 303, CHARLOTTE, N.C 28215, USA;

"PROSECUTING PARTY"

DEFENDANT:  Mr ALIEU BADARA MOHAMED CONTEH,
residing at No. 6 avenue KASONGO, Quartier
SOCIMAT in the Gombe Commune, Kinshasa,
DRC;

"DEFENDING PARTY"

---

In light of the following procedure payable to the
aforementioned defendant summoned before this
court, given:

*"That on 5 April 2000, the prosecutor following the example of his
RESOTEL associates, precariously and with no compensation, gave its 30
company shares to the company AFRICAN WIRELESS INC and authorised
Mr ALIEU B. CONTEH, on 3 July 2001, to negotiate a new partnership which
led to the creation of the company VODACOM;*

*That having received nothing for this technical transfer, the prosecutor
undertook several recovery measures that unfortunately were met with bad
faith from the defendant;*

*That curiously, on 25 January 2011, the prosecutor was surprised to
receive, through the intermediary of his Council's firm located on the Avenue
de l'école in Kinshasa/Gombe, two items from the defendant discreetly named
"SWORN STATEMENTS" of 11 January 2002 that were in fact made by the
latter unbeknownst to the prosecutor;*

*That, in the same time-space context, with fraudulent intent the
defendant had it's Council fabricate the minutes of the company RESOTEL's
General Meeting of 5 April 2000 in which the defendant committed fraud by
using a company that does not exist, neither in the Congo nor the USA,
namely, AFRICAN WIRELESS INC;*

*That by using the said items that, among other things, misrepresent the truth by acting as false declarations of the defendant to certify that the prosecutor had supposedly received payment for the said 30 shares;*

*That moreover, under the same circumstances, on 25 April 2012 the defendant also received one of these items referred to as Sworn statement of 11 January 2002 from the prosecutor and a letter of 7 March 2011 in which he falsely declares that he is the director of the fictional company AFRICAN WIRELESS INC., which only exists in his imagination;*

*That these items were intentionally created by the defendant for the sole purpose of harming the prosecutor's interests for the former's own benefit;*

*That the defendant's behaviour, which has greatly harmed and continues to harm the prosecutor, constitutes an offence of forgery and use of forgery, outlined and punishable under Articles 124 and 126 of the ordinary Penal Code;*

*For these reasons*

*With all general reserves;*

*The Defendant*

*Hereby hears this action to be admissible and founded,*

*Hereby hears that the offences of forgery and use of forgery made against him have been made in law and in fact;*

*Is hereby sentenced to the penalties stipulated by the Law with immediate arrest;*

*Hereby hears the confiscation and destruction of the said incriminated documents;*

*Is hereby sentenced to pay the prosecutor the equivalent in Congolese Francs the sum of USD 2,000,000 (two million American dollars) as damages;*

*Is hereby sentenced to pay the court fees;*

Given that the case is set for the public hearing of 29/05/2012 at 9a.m. following the ordinance from the President of this Court;

By the writ of bailiff NSILULU MUZITA of this court dated 10/05/2012, the above was read directly to the defendant having appeared before this court at the public hearing of 29/05/2012 at 9a.m.;

Given the above hearing for this case at which the prosecuting party was represented by his Advisors, Masters SABIN NSINGI and ILONGA,

lawyers at the Kinshasa/Gombe and Matete Bar, while the defendant voluntarily appeared in person assisted by his Advisors, Master MBUY, MBIYE TENAYI, RADO TSHITEMBO, Joseph LUMBALA, NZIMBA BILALI, all lawyers at the Kinshasa/Gombe Bar;

Given the mutually agreed postponement of the case to the public hearing of 15/06/2012 for the prosecutor to appear in person and further investigation;

Given the above public hearing for this case at which the prosecutor was represented by his Advisors, Masters NSINGI, Gerard ILONGA, MAKAYA and DIYOKA, while the defendant appeared in person assisted by his Advisors, Masters MBUYI-MBUYI, TSHITEMBA, Joseph LUMBALA, François KENA, Serge NZIMA and Freddy MULAMBA, on the mutually agreed postponement;

Given the proceedings at this public hearing;

Given the postponement of the case to the hearing of 19/06/2012 for the prosecuting party to appear in person;

Given again, the proceedings of this public hearing;

Given the postponement of the case to the public hearing of 28/06/2012 for the production of original documents;

Given the above hearing of this case at which the prosecuting party appeared through his usual Advisors, while the defendant appeared in person assisted by his usual Advisors;

Given the postponement of the case to the public hearing of 03/07/2012 and to 24/07/2012 for the parties to appear in person and the hearing of witness WANTWADI;

By the writ of bailiff Anne Marie NDIKA of this Court dated 24/07/2012, the summons to witness was given to the said witness to appear and act as witness at the public hearing of 24/07/2012 at 9a.m.;

Given the hearing of this case, at which the prosecutor appeared in person assisted by his usual Advisors, while the defendant appeared in person assisted by his Advisors, witness WANTWADI also appeared in person;

Given again the proceedings of this case and witness statement;

Given the interlocutory ruling made by this bench of this Court, and orders as follows:

"*For these reasons:*

ř

*The Court;*

*In light of the Code of Court Organisation and Jurisdiction;*

*In light of the Penal Proceedings Code;*

*Hereby requests the Inspector General of the Criminal Investigation Department of the Public Prosecutor's Office to appoint a graphologist expert to:*

- *inform us whether the signatures on the Sworn Statements of 11/01/2002;*
- *the discharges of 25 October 2002;*
- *and of the 3 September 2008, are the work of the same person; Report back no later than the hearing of 31/07/2012;*

*Hereby given as an interlocutory ruling by the Gombe Magistrates' Court, presided by Mr MASUDI BALIMUACHA, Judge, Public Prosecutor TAMPWO, with the assistance of MBAMBU Louise, Court Registrar."*

By the writ of bailiff MBAMBU Louise of this Court dated 26/07/2012, the Superintendent of the Criminal Investigation Department of the Public Prosecutor's Office was notified of the interlocutory ruling to deposit his report at the hearing of 31/07/2012 at 9a.m.;

In light of the above hearing of this case at which all parties appeared in person, the defendant assisted by his Advisors;

Given again, the proceedings of this case at this hearing;

In light of the postponement of the case to the public hearing of 10/08/2012;

In light of the above hearing of this case, at which the prosecuting party and defending party appeared in person, both assisted by their usual Advisors;

Given the interlocutory ruling made by the bench of this Court presented as follows:

"<u>For these reasons:</u>

*The Court;*

*In light of the Code of Court Organisation and Jurisdiction;*

*In light of the Penal Proceedings Code;*

*Hereby requests the Inspector General of the Scientific Investigation Department to:*

*Inform us at the Court whether the signatures made on the Sworn Statements of 11/01/2012;*

- *on the releases of 25 October 2002, 28/11/2002, 03/09/2008;*
- *on the memo to the attention of Mr Alain of 5/12/2000;*
- *on the distribution contract of 17 September 1989;*
- *on letter No. 031/TL/RS/2000 of 17 November 2000;*
- *on the memo to the attention of Mr Alain of 21 November 2000;*
- *on the contract No. 02/TL/LS/2000 of 15/05/2000;*
- *on letter No. 001/TL/RS/2001 of 19/01/2001;*
- *on the registration in the New Commercial Register of 29/09/1997, acknowledgement of 19/09/2001;*
- *on Letter NO. 007/LT-RS/1999 of 21 October 1999;*
- *and on the RESORTEL SPRL's Statutes of 19 September 1997; are the work of the same person.*

*The Superintendent of the Scientific Investigation Department will be asked to respond to the question above and report to the Court no later than the public hearing of 21/08/2012;*

*Hereby given as an interlocutory ruling by the Gombe Magistrates' Court, presided by Mr MASUDI BALIMUACHA, Judge, Public Prosecutor TAMPWO, with the assistance of MBAMBU Louise, Clerk of this Court."*

In light of the notification of the said ruling by the bailiff MBAMBU Louise on 15/08/2012 and the summons to witness dated 20/08/2012 given to the Superintendent of the Scientific Investigation Department and to witnesses Alphonse VIERRA and KIMBALA TAMBA dated 20/08/2012 and 21/08/2012, ordered to appear before this court at the public hearing of 21/08/2012 at 9a.m.;

In light of the hearing of this case at which both parties appeared in person assisted by their usual advisors;

Given again, the proceedings of this case at the hearing of 21/08/2012;

In light of the postponement of the case to the public hearing of 23/08/2012 for the plea.

In light of the hearing of this case at which only the defendant appeared in person, the prosecuting party was represented by his usual advisors, as was the prosecuting party;

Yes, the prosecuting party through his Advisors, pleaded and concluded:

<u>"For these reasons:</u>

*With all general reserves;*

Requests the Court to:

- declare the present action admissible and founded;

- declare the offences of forgery and use of forgery established in the defendant's headquarters;

- sentence the defendant to the penalties stipulated by law and with immediate arrest;

- order the confiscation and destruction of the incriminated documents, namely ROSETEL's minutes of 05 April 2000 and the Sworn Statements of 11 January 2002;

- sentence the defendant to pay the prosecutor the equivalent in Congolese Francs of the sum of USD 2,000,000 as damages;

- sentence the defendant to pay the court fees;

And Justice shall be done!

<div align="right">On behalf of the concluding party<br>His Advisors"</div>

In his closing speech the Public Prosecutor of KINSHASA requested the court:

- "to declare the action brought by the plaintiff TUKEBA LESSA Clément as admissible but unfounded;

- to state as not established in law and in fact the offences of issuing and using false documents stipulated and punishable under Articles 124 and 126 of the Congolese Penal Code Book II charged against the accused ALIEU BADARA MOHAMED CONTEH and consequently, that you will send for all legal purposes;

- to state that there is no cause to apply Article 68 of the Penal Code for the reasons that as stated in the minutes of the hearing the above accused has always appeared and provided an address known in the Congo, which meant he could be reached by the plaintiff in his private prosecution;

- to sentence the plaintiff to pay all fees and expenses;

And you shall administer the best justice!

<div align="right">KISHIBA MWENDA DOMINIQUE<br>Public Prosecutor"</div>

ţ

In turn, the defendant through his usual advisors pleaded as follows:

"The forgery, which was never established, is to be declared as non-founded because, on the one hand, the company African Wireless Inc. does legally exist in the USA having been registered in July 1990 in the State of Delaware (USA) under number 750208006/2237229 under the name of African Cable Network Inc. and having changed its company name in December 1997 following the amendment certificate No. 971418651/2237229 and that it is located in California (Irvine) in the Offices of Donald Segretti, its Lawyer and Associate, and, on the other hand, the sworn statement of 11 January 2002 by TUKEBA, signed by the same before Mrs ZEZE, is the release notice for the payment of USD 10,000 representing 10% of the sum received by the late KINKELA and the fruit of a compromise made with the aforementioned CONTEH;

On behalf of the defendant
Master TSHITEMBO"

The defendant having spoken in his defence to state his innocence and join with his advisors' defence speech;

Whereupon, the Court hereby declares the hearing closed, shall examine the case and issue a ruling within the legal period;

In light of the public hearing of the case of 06/09/2012 at which neither party appeared, the following ruling is announced from the bench:

## X X X
## X X

## RULING

Considering, by private prosecution, Mr ALIEU BADARA MOHAMED CONTEH is brought before this Court to answer to the offences of forgery and use of forgery stipulated and punishable under Articles 124 and 126 of the Congolese Penal Code Book II;

That at the public hearing of 23/08/2012 of the case pleaded and debated, Mr TUKEBA LESSA KIMPUNI, the prosecuted appeared represented by his advisors, lawyers Master Gérard LEDI, Sabin Albert NSINGI, Mory ILONGA, Delphin KANKOLONGO and Raoul ONOKENGE, while the defendant appeared in person assisted by his advisors, lawyers Master MBUYI MBIYE, TSHITEMBO, Joseph LUMBALA, Françoise KENA, ZIMA, postponed as mutually agreed;

That the proceedings are regular, the Court affirms its jurisdiction;

Considering the facts, the prosecutor demonstrates that on 05/04/2000, in keeping with his associates of the company RESOTEL SPRT, precariously

and with no compensation, gave its 30 company shares to the company AFRICAN WIRELESS INC and authorised Mr ALIEU BADARA CONTEH, on 3 July 2001, to negotiate a new partnership which led to the creation of the company VODACOM;

That having received nothing for this technical transfer, the prosecutor undertook several recovery measures that unfortunately were met with bad faith from the defendant;

That curiously, he continues, on 25 January 2011, he was surprised to receive, through the intermediary of his Council's firm located on the Avenue de l'École in Kinshasa/Gombe, two items from the defendant discreetly named "SWORN STATEMENTS" of 11 January 2002 that were in fact made by the latter unbeknownst to the prosecutor;

That, in the same time-space context, with fraudulent intent Mr ALIEU BADARA MOHAMED CONTEH had his Council fabricate the minutes of the company RESOTEL's General Meeting of 5 April 2000 in which the defendant committed fraud by using a company that does not exist, neither in the Congo nor the USA, namely AFRICAN WIRELESS INC;

That the defendant used these items that contain misrepresentation of the truth with the defendant's false declaration that he received payment of the aforementioned 30 shares;

That moreover, on 25 April 2012 he received one of these items referred to as a "Sworn statement" of 11 January 2002 from the defendant and on 7 March 2011, in which the latter falsely declares that he is the director of the fictional company AFRICAN WIRELESS INC.;

That, he concludes, this behaviour that has caused and continues to cause him significant damage, is a breach of the law;

Considering, that in response, the defendant maintains that in the present action there is a time limit for prosecution given that the items accused of forgery date back to 2000 for the minutes of RESOTEL SPRL's General Meeting minutes and 2002 for the sworn statements;

That, regarding the actual facts, he is tired of the threats the prosecutor continues to make on the so-called shares he is supposed to personally hold in the companies RESOTEL (30%), CWN (12%) and even VODACOM (5.88%), especially that he even allowed himself to put the managing director of CWN on notice to immediately pay the sum of USD 1,775,785 as dividends, the latter company decided to end this immoral situation by submitting a case before the Commercial Court under RCE 220 against the current prosecuting party to cease this disturbance and pay damages at the hearing of 24/04/2012;

That, in reaction to this action and to carry out this twisted plot in Kinshasa and Brussels in 2012 by, in particular, denying and casting doubt on

the transfer deeds signed in April 2000, recovering the transferred shares (which had not been fully paid) and launching proceedings against Mr TUKEBA LESSA Clément for forgery and use of forgery in RESOTEL SPRL's Extraordinary General Meeting of 05/04/2000 and the sworn statements on 11/01/2002 of the late KINKELA and prosecutor;

That, to improve understanding of the case, the defendant has provided the shareholder history for the companies RESOTEL SPRL and CWN as follows:

### A. Period from 25/08/1997 to 05/04/2000

- On 25/08/1997, African Cable Network SPRL, in its actions and functions as CEO, solicited a GSM and VSAT mobile network operating licence from the Minister of Posts and Communication, who happened to be the late Master KINKELA VI KANSY, a friend of Mr WANTUADI, who had put him in contact with the Ministry;

- On 18/09/1997 the company RESOTEL SPRL was created by the late KINKELA himself;

That in this company, for obvious reasons of incompatibility and conflict of interests given his function, the late Master KINKELA, who did not wish to appear, had his godson, Mr TUKEBA, come to his political office to sign the RESOTEL Articles of Association instead of the former and to represent the same in this company;

That therefore, RESOTEL SPRL has three natural associates: FERRUZI KALUME (60%), TUKEBA LESSA Clément (30%) and MATAMA BAMVUIDI (10%);

That RESOTEL's and CWN's Articles of Association were drawn up by Master TWAMBA, Master KINKELA's colleague and recorded by the latter's secretary, Mr Alphonse VIERRA, contrary to the prosecuting party's allegations on NETCELL;

That, at the signing of the said Articles of Association, Mr TUKEBA was presented to him by the late Master KINKELA who stated this was who he was going to work with and that the prosecutor acknowledged him himself at the hearing of 21/08/2012;

That the company capital was 50,000,000 ZRN (18/09/1997) paid in full by himself;

- On 19/09/1997, the company CWN was created under the same conditions as RESOTEL SPRL with two legal persons as associates:

1. AFRICAN CABLE NETWORK INC., company incorporated in the United States, registered in the State of Delaware, USA, on 27/07/1997, under registration certificate No. 971418651/2237229 as

presented by Mr Donald SEGRETTI on 09/12/1997 and RESOTEL SPRL;

That the company capital was 50,000,000 New Zaires distributed as follows: 60% African Cable Network and 40% for RESOTEL;

That Mr TUKEBA will sign CWN's Articles of Association as Managing Director of RESOTEL SPRL;

- On 07/10/1998: Minister KINKELA notified the company CWN that it had been selected as the future GSM operator on the condition that it paid USD 2,000.00 for the GSM mobile network operating licence;

- On 17 and 18 November 1997, he instructed his assistant, Mrs ZEZE to pay the deposit of USD 108,000 (50,000 on the 17 and 50,000 on the 18 November 1997) for the licence fee from his own funds without the contribution from any other RESOTEL SPRL associate;

- On 09/12/1997, the company AFRICAN CABLE NETWORK changed its name to AFRICAN WIRELESS INC. as aforementioned, due to the solicited wireless mobile network operating licence;

- On 02/01/2998, the Telecommunication public service concession licence No. 02/927 GSM was issued to CWN;

- On 13/02/1999, having difficulty in raising the balance of the licence (USD 1,900,000), CWN asked Minister KINKELA for an additional 18 months to pay the balance;

- On 18/02/1999, Minister KINKELA authorised the request by granting this extension;

- On 11/05/1999, the D.G.R.A.D. accepted that CWN pay the balance of the licence fee in several instalments;

That, this is when he went to the CWN associates to ask them to pay the balance of said licence but also to honour the invoice for telecommunication equipment supplied by NORTEL and GTE;

That, faced with the inability to fulfil his company obligations, the late Master KINKELA, who made no cash contribution but constituted in all respects a CWN associate – for the obtaining of a licence and the constitution of RESOTEL and CWN by his Law Firm, decided to pull out of RESOTEL SPRL by transferring his 30 company shares subscribed to but not paid up in cash;

That to meet the financing requirements, the company RESOTEL SPRL held the Extraordinary General Meeting of 05/04/2000 preceded by that of CWN at which all CWN associates had decided to increase the company capital from 5000 Congolese Francs to 50,000,000 Congolese Francs

because 50,000,000 New Zaires only amounted to 500 Congolese Francs at the time;

That this increase of capital was paid up by the associates of AFRICAN WIRELESS INC. that he represented and with no contribution made by the associates of RESOTEL SPRL as stated in CWN's General Meeting minutes in which it is written: "that all contributions were paid in full according to the details presented in the associates' register";

That Mr TUKEBA, who had attended this general meeting as the representative of RESOTEL SPRL, signed these minutes;

That during the said CWN General Meeting, Mr TUKEBA, was still an associate via the late Master KINKELA, although as managing director had not paid any sum towards CWN's increase of capital as with the constitution of RESOTEL SPRL;

That, he continued, this general meeting was followed by that of RESOTEL SPRL presided by Mr TUKEBA, the managing director, which made the two following resolutions:

1. Entry of African Wireless Inc. into the shareholding of RESOTEL SPRL as a new associate by the acquisition of 51 shares following the transfer of 30 shares from Mr TUKEBA and 12 shares from Mr SITA and 9 shares from Mr MATAMA BAMVUIDI;

2. The institution, in co-management with Mr ALIOUNE DIENG representing African Wireless Inc. and Mr TUKEBA

That, it concludes, it appears from this period that the prosecuting party, with regard to the late KINKELA, had lost his quality of associate but had remained co-manager with Mr ALIOUNE DIENG representing the company African Wireless Inc. thanks to the transfer of all of the company shares he possessed;

That Mr TUKEBA then attended CWN's general meeting that had decided to increase CWN's company capital entirely borne by African Wireless Network INC. that he represented without the RESOTEL associates releasing any of RESOTEL SPRL's company shares for the said increase of capital;

That finally, Mr TUKEBA had signed the General Meeting of 05/04/2000 minutes but also with the other RESOTEL SPRL associates, had accepted the entry of African Wireless Inc. into RESOTEL's shareholding by the purchase of 51 company shares;

B. Period from 05/04/2000 to 11/12/2001

Given that, owing to the entry of African Wireless Inc. in RESOTEL's shareholding, the latter began its business activities with TUKEBA as co-managing director paid monthly;

That on 03/07/2001, the company CWN held a general meeting attended by prosecutor as co-managing director at which decisions were made to open the capital to interested third parties, authorise the prosecutor to initiate negotiations and renew all resolutions made during the general meeting of 05/04/2000, particularly those regarding CWN's increase of capital;

That, he asked himself how the prosecuting party, who alluded to the mandate he was to have issued on 3 July 2001, did not acknowledge the general meeting of 05/04/2000 given that all the resolutions were renewed by CWN's general meeting of 03/07/2001 which he attended and signed the minutes thereof;

That on 14/09/2001, the company RESOTEL SPRL held an extraordinary general meeting presided by Mr Alioune DIENG, in the presence of the prosecutor, during which it was decided that RESOTEL's headquarters would be relocated from the MASSAMBA building at 292 avenue de la Justice to Kinshasa/Gombe, and the suppression of the co-management by discharging Mr TUKEBA and only maintaining Mr ALIOUNE DIENG as managing director of RESOTEL SPRL;

That the prosecutor unreservedly signed the minutes that established his withdrawal from the company RESOTEL SPRL as managing director having already lost his quality of associate through the late KINKELA;

That therefore, on 19/09/2011, RESOTEL SPRL paid the former managing director (TUKEBA) three thousand dollars as a payoff indemnity as shown in the act of acknowledgement established on the same day;

That on 11/12/2011, RESOTEL SPRL held another extraordinary general meeting during which African Wireless Inc. transferred all its company shares in RESOTEL SPRL to ODESSA CAPITAL INC., another company incorporated in the United States that he (the defendant) represented;

C. Period from 11/12/2001 to 31/10/2002

Given that, he continued, subsequent to the sitting of RESOTEL's extraordinary general meeting of 11/12/2001 and once the minutes had been recorded by a notary on 07/01/2001, ODESSA CAPITAL INC. represented by the defendant bought out all of RESOTEL's associates who had transferred their shares during the extraordinary general meeting of 05/04/2000, as follows:
-   M KINKELA: USD 100,000 for 30 company shares held by Mr TUKEBA;
-   MATAMA: USD 8,638 for his 9 chares after 11/01/2002;
-   FERRUZI: USD 30,000 for the 12 shares defended by Mr Joseph SITA after 11/01/2002;

That, as release for the reception of all these sums, the late KINKELA dictated to RESOTEL SPRL's legal consultant, the sworn statement that RESOTEL's services had seized;

That the late KINKELA specified in his sworn statement, the fact that he acted in RESOTEL SPRL under the cover of Mr TUKEBA LESSA and that therefore the sworn statement form came from the late KINKELA and not TUKEBA;

That, he maintains, TUKEBA expressed his frustration to him, for having paid everything to the late KINKELA without having kept something that he had decided, after discussions and negotiations, to pay him another 10% at a later date, namely a further USD 10,000;

That having found a compromise, he informed his assistant Mrs ZEZE to pay on 11/01/2002 the sum of USD 10,000 to the prosecuting party who was in the meeting room next to his office in which the late KINKELA was present;

That, as reception for the payment of this sum, Mr TUKEBA signed as a release form, the sworn statement that Mrs ZEZE had presented to him;

That, during the proceedings, Mr TUKEBA acknowledged that he had received the sum of USD 10,000 on 11/01/2002 but did not recall from whom he had received the said sum and did not remember having signed the document;

That, on this subject, Mrs ZEZE declares that she was the person who had paid the USD 10,000 to TUKEBA;

That, in compliance with the promise made by the prosecutor for the other USD 10,000, Mr TUKEBA received the promised USD 10,000 from Mrs ZEZE, namely USD 2,000 on 25/10/2002 and USD 500 on 28/11/2002;

That, in the meantime, RESOTEL SPRL held an extraordinary general meeting on 31/10/2002 during which the company KERATSU Holding Ltd. Bought 49 shares held by Mr FERRUZI (48%) and MATAMA (1%); so that RESOTEL is now made up of two legal persons, namely ODESSA CAPITAL INC. and KERATSU Holding Ltd;

That, it is important to note however that KERATSU Holding Ltd represented by Mr FERRUZI KALUME never paid up the shares subscribed in RESOTEL SPRL so that RESOTEL SPRL operates with its own funds;

D. Period from 31 October 2002 to today

Given that during this period the prosecutor left to work in BRAZZAVILLE at the World Bank and returned in 2007 to see the defendant to propose a joint mineral water venture in the Lower Congo that required financing;

That this project has remained on the backbench;

That on 03/03/2008, the prosecutor while in Kinshasa and remembering the balance of USD 10,000 he had been promised by the defendant on 11/01/2002 went to see Mrs ZEZE to receive the remaining 8,000 USD as shown in the release notice he signed;

That at the public hearing, the prosecutor acknowledged that he had received all of the USD 20,000 he had been promised to soothe his anger at his godfather, the late KINKELA;

That despite everything that he had done for him, Mr TUKEBA supported acts of nuisance such as secret meetings in Brazzaville and Kinshasa that he acknowledges; acts which have been denounced by one of the participants, namely Mr Joseph SITA;

That, indeed, by a letter addressed to him, in his sworn statement Mr Joseph SITA denounces the meetings in Brazzaville and Kinshasa held on 17 and 21 May and 1 June 2010, attended by FERRUZI, TUKEBA and himself with the purpose of denying and calling into question the transfer deeds signed in April 2000, recovering the transferred shares and initiating actions against Mr ALIEU BADARA MOHAMED CONTEH for forgery and use of forgery;

That, as a result of these undertakings, the complotters established a memorandum of understanding for operational regulations between RESOTEL SPRL associates under which terms they shared out their shares recovered from him;

Given that a request for the reopening of the proceedings was brought before the court by the defendant for the reason that not enough information had been provided in the case regarding the objection of inadmissibility developed by the defendant based on the harmful plot made against him by the prosecutor and others in Kinshasa and Brazzaville;

That on this subject the court stated that only the court itself is able to say whether an item had been sufficiently investigated because all inquiries are carried out to provide clarification to the court;

That, as such, the question stigmatised by the defendant having been the object of an open debate in a public hearing, which sufficiently clarified the court, this request will not be granted;

Given that adjudicating on the time-limit for prosecution heralded by the defendant because the offences of forgery held against him date back to 05/04/2000 and 11/01/2002, Article 24 Point 1 of the Penal Code Book II states that prosecution of offences with a maximum imprisonment of 5 years, as in this case, is prohibited after 3 years have gone by;

That therefore, there is a time limit for prosecution in the present action initiated in 2012, namely 10 years later;

That on this subject, the court notes in the facts of the case and subsequent debates at the public hearing, that the defendant sent the two items to the prosecutor through the latter's Council on 25/01/2011;

That therefore, the court will not allow this precondition given that the time limit for prosecution given to offences of forgery and misuse only begins with regard to the forger at the last date at which the said forgery was used;

That indeed, the last use of the items accused of forgery only dates back to 25/01/2011, namely less than three years ago, so that there is no reason to talk of a time limit for prosecution in this case;

That the time limit for prosecution of forgery and various uses of this forgery only begins with regard to the forger at the last date of the most recent use of the forgery (Cass., 13 January 1943, Pas, I 18 in G. MINEUR, *Commentaire du Code penal Congolais,* 2nd Edition, Brussels F. LARCIER, SA, 1953, - P.289);

Given that adjudicating on the actual facts, and first of all on those of creating false documents, the court notes that Article 124 of the Penal Code Book II states:

"*The creation of false documents with fraudulent intent or with the intent to harm will be punished by an imprisonment of six months to five years and a fine of twenty five to two thousand francs, or only one of these penalties*";

That, this provision indicates that this incrimination supposes that this was a misrepresentation of the truth characterised either by changing the physical nature of the document, such as scratching out or blotting, or by changing the information of the document without falsifying its physical nature, the fraudulent intent of voluntarily and knowingly changing the truth of a document by the criminal agent, namely cruelly and fraudulently with the aim to harm another or to obtain illegal advantages or benefits for himself or others; and a prejudice by the latter that this misrepresentation of the truth must have caused or is likely to cause physical or moral harm to a person or entity (G. MINEUR, Op Cit page 285 to 289);

Given that in this specific case, first of all in examination of the fact that the meetings said to have been held in KINSHASA and BRAZZAVILLE with the participation of the prosecutor, Mr FERRUEI KALUME, NYEMBWE and Mr SITA NSONIZEMO on 17 and 21 May and 1 June 2010, which the defendant claims to be the foundation of the present action taken against him, the Court notes that Mr ALIEU BADARA MOHAMED CONTEH refers to this in the "Sworn Statement" of 16/09/2010 that he gave to Mr Joseph SITA NSONIZEMO;

That in support of this means, he inserted in the file the documents entitled "`Report No. 1 of the meeting of 17 May 2010, Report No. 2 of the meeting held in BRAZZAVILLE on 21/05/2010 and report No. 3 of the meeting held in Kinshasa on 01/06/2010";

That on this subject, the Court must note the different reports do not bear the signatures of the participants of the said meetings and not even those of the different meeting reporters, thereby casting strong doubt as to the object of these meetings as recorded in Mr Joseph SITA NZONIZEMO's "Sworn Statement" of 16/09/2010;

That this is all the more true and relevant in that at the public hearing of 21/08/2012, Mr TUKEBA LESSA Clément did indeed admit to have met in BRAZZAVILLE and here "but to retrieve payment for the transferred shares";

That faced with this situation, the Court, given the doubt over the exact object of the said meetings, will not take into account this method that establish the illegal character of the present case;

Adjudicating on the merits of the case itself, the court finds that it remains true that on 05/04/2000 an Extraordinary General Meeting of the company RESOTEL SPRL was held presided by Mr TUKEBA LESSA Clément, the managing director;

In this light, the latter supports that at this meeting, the defendant made false declarations on the minutes having sanctioned this meeting by falsely declaring that the company African Wireless Inc. whose headquarters were located at No. 3 PARK PLAZA 1735 Irvine, CALIFORNIA 92714, USA, belonged to him and had entered into RESOTEL SPRL's shareholding on the one hand, and on the other hand, that the same minutes constituted good and valid discharge, although he had never received payment for his 30 shares;

That for his part Mr ALIEU BADARA MOHAMED confirms that this is not the case given that the company African Wireless Inc. is indeed legally incorporated in the USA having been registered in July 1990 in the State of Delaware (USA) under No. 750208006/2237229 under the name of African Cable Network INC and having changed name in December 1997 under the amendment certificate number 971418651/2237229 and that it resides in CALIFORNIA (IRVINE) in the Office of Donald SEGRETTI, its Lawyer and associate on the one hand, and that on the other hand, the prosecutor who had presided and signed the minutes of this Extraordinary General Meeting can no longer deny this;

That regarding this matter, the Court noted that it remains true that the company AFRICAN WIRELESS INC. does indeed exist in the United States as shown in the registration certificate No. 750208006/2237229 of 27/07/1990 of the State of DELAWARE, USA, for the company AFRICAN CABLE NETWORK INC., which changed company name to become AFRICAN WIRELESS INC. as shown in amendment certificate number 971418651/2237229 of 09/12/1997;

That it also remains irrefutable that on the accused minutes the headquarters of AFRICAN WIRELESS INC. was presented at No. 3 PARK PLAZA 1735 Irvine, CALIFORNIA 92714, USA, which on 05/04/2000 the said company was not residing;

That this is obvious, in a letter, the Manager of Regulatory Matters of the Irvine (CALIFORNIA) police operating licence regulations department, states that "according to their database the operating licences do not hold a permit" for the said company AFRICAN CABLE NETWORK;

That, as a result of the foregoing, this mention constitutes a falsification, transformation and misrepresentation of the truth;

That the Court does not subscribe to the defendant's statement that this company is located in CALIFORNIA (IRVINE) in the Office of Donald ZEGRETTI, its lawyer and associate, given that on its own items provided in the dossier, on 07/06/2012 the same authority, the Manager of Regulatory Matters at the Irvine (CALIFORNIA) police operating licence regulations department, confirmed to the defendant that the Lawyer Donald SEGRETTI had an operating licence for his town in April 2003, namely three years after the Extraordinary General Meeting on which the dispute is based;

Given that regarding the mention reiterated in the first resolution of the minutes having sanctioned the Extraordinary General Meeting of 05/04/2000 stating that the latter constituted "good and valid discharge", although the prosecutor never received payment for this 30 shares, the Court notes that the term "discharge" means the debtor's act of delivery by which the creditor acknowledges receipt of his debt (LEXICON OF LEGAL TERMS, DALLOZ, 17 ed., 2009, p.589);

That clearly, employed in the aforementioned minutes, these terms mean that on 05/04/2000 or even 06/04/2000, the date at which it was signed, that the associates had received payment for their shares;

That, in light of these public hearing debates and dossier items the Court is fully convinced that this is not true;

That, indeed, there is nothing to explain the *raison d'être* of the sworn statements of 11/01/2002 heralded by the defendant except that on the day of the minutes the prosecutor received no payment for the transferred shares;

That, as a result, this mention also constitutes a falsification, transformation and misrepresentation of the truth;

That, adjudicating on the question of accountability for the above falsification of the truth, the Court notes firstly that the company AFRICAN WIRELESS INC., recipient of the transferred shares at RESOTEL SPRL's Extraordinary General Meeting of 05/04/2000 lies with the defendant, among others;

That furthermore, at the end of this meeting, the legal consultant undertook the formalities of depositing and publishing the minutes in the Office Journal, which he brought to the prosecutor to sign the next day, namely 06/04/2000;

That curiously, it is the same consultant who, among other things, defended the defendant's interests in the present case;

That, therefore, in light of the foregoing, the Court is fully convinced that only the defendant made the said falsifications of the truth via his consultant, on the accused minutes;

That indeed, only the defendant, recipient of the transferred shares through the company AFRICAN WIRELESS INC., had an interest to do so;

Given that this misrepresentation of the truth was made in writing, specifically on the minutes of RESOTEL SPRL'S Extraordinary General Meeting of 05/04/2000, whose purpose was to provide proof of any kind of the facts that he evoked, namely that the new shareholding was headquartered at the address stated and that the RESOTEL SPRL associates who had transferred their shares to him had received payment for this;

That furthermore, there is no shadow of a doubt that this falsification of the truth causes harm to Mr TUKEBA LESSA Clément by losing him his 30% of shares;

That, in this light, the Court does not subscribe to the defendant's statement that the prosecutor was only a frontman representing the late Master KINKELA VI KAN'SI given that throughout the case, he has provided no proof that can certify this claim;

That indeed, neither himself nor Mr Alphonse VIERA, former colleague of the deceased who he called to appear and asked to speak at the public hearing, were able, for the duration of the debates, to produce the secret agreement made between the prosecutor and deceased on this matter;

That this is true since, after having admitted that this item existed, Mr Alphonse VIERA was not able to say where it was so that it could be brought before the Court;

That however, it appears in RESOTEL SPRL's Articles of Association that the prosecutor holds 30%, namely 30 shares of a value of 15,000,000 New Zaires (Article 5 of the Articles of Association);

That, under these circumstances, the Court shall only retain for legal purposes that this last reality is based on evidence;

That furthermore, this is required because the defendant has confirmed throughout the proceedings that the late Master KINKELA VI KAN'SI's

contribution to the company was supposedly through the provision of services;

That, the Court notes that the value of the contribution in services or the contribution in cash is excluded from the company capital so that these are forbidden for all associates whose liability is limited to the total of their contributions, because company creditors may not seize these and any associate bound only to their contribution will not be bound to anything (LUKOMBE NGHENDA, _Congolese Corporate Law_, PUC, 1999, TI. Pages 56 to 57);

That indeed, the principle is that each associate must be able to participate in the company losses and at least be liable for their initial investment;

That the doctrine concludes that "it is in this manner it can be explained that under Congolese Law, contribution in services are only possible in partnerships including collaborations and limited partnerships (except from the limited partners). In these companies, all associates are personally liable for the company for their individual assets; contribution in services is impossible for SPRL (private limited liability) and SARL (limited liability) companies";
(LUKOMBE NGHENDA, Ididem;)

That therefore, contrary to this, the limited liability company RESOTEL's Articles of Association stipulate that, given the prosecutor holds 30% of the shares with a value of 15,000,000 New Zaire;

That finally, the defendant acted with fraudulent intent, that with his _iter criminis_, he wished to deprive the prosecutor of his shares to gain illegal advantages, because it is indeed the company AFRICAN WIRELESS INC. of which the former is an associate, that benefits from the contributions he wished to snatch;

That it is ruled that the fraudulence required for the existence of the forgery is with the intent to gain illegal profit or advantage for himself or a third party (Cass. 7 October 1957, _Belgian Congo Codes and Laws_, Leo, ed. Belgian-Congo Codes and Laws, Brussels, Maison F. LARCIER, TI, 1958, page 329);

Given that the Court does not accept the accusation that claims the transfer of the shares is understood to be a consensual contract made for the exchange of consent between the transferor and the transferee on the shares to sell and the price to pay for the acquisition, which will be done as stipulated in Paragraph I of the second page of the minutes of 05/04/2000;

Given indeed, that the problem this poses is that because, as demonstrated above, the prosecutor transferred his shares but was never paid for their value as falsely claimed in the said minutes;

That, likewise, the Court will not accept the accusation claiming the accused minutes can not be false because the prosecutor had signed them and more likely his own lawyers were guilty of trickery and misrepresentation, who he had fully trusted, who misguided him and who the judge, who should have been brought before this matter is commercial, in cancellation of the said minutes;

That indeed, wilful misrepresentation is defined as fraud, sometimes deceit or a blameable act with the aim to deceive one of the parties of a legal deed to obtain his/her consent (LEXICON OF LEGAL TERMS, DALLOZ, 17 ed., 2009, page 265) or any other artifice used by one party to deceive another at the conclusion of a legal deed." Any surprise, fraud, subtly, feint or any other ploy used to trick someone" (A. SHOIER, _Belgian Congo Civil Law_, Brussels, Maison F. LARCIER, S.A., 1956, TII, pages 36-37);

That precisely, these fraudulent deceitful manoeuvres consist _in specie_ by the insertion into the minutes of the Extraordinary General Meeting of 05/04/2000 of the mention of a false headquarters of RESOTEL SPRL's shareholding's new member and of the payment of the associates for the value of their shares which had not been done, and constitute a falsification of the truth as demonstrated above, and moreover, the preceding developments have shown that the legal consultant who submitted the said minutes for the prosecutor to sign was acting on behalf of the defendant;

Given that the Court shall not acknowledge the measures developed by Mr ALIEU BADARA MOHAMED CONTEH where he states that MR TUKEBA LESSA Clément can claim to be ignorant of the minutes of 06/04/2000 when the General Meeting of CWN of 3 July 20001 decided, among other things, to extend all resolutions made by RESOTEL SPRL's General Meeting of 05/04/2000;

That this is necessary because no proof has been provided to show that at this time the faulted Minutes were read before those attending the meeting;

That, subsequently, the Court shall reserve the same solution for the defendant's statement that RESOTEL SPRL's General Meeting of 14/09/2001 had erased the conference by discharging the prosecutor and only maintaining Mr Alioune DIENG as managing director and that Mr TUKEBA LESSA Clément had signed the minutes that order his withdrawal from RESOTEL SPRL, a fact proven by the latter receiving his payoff indemnity on 19/09/2001;

That indeed, the Court notes that Article 12 of RESOTEL SPRL's Articles of Association stipulate: "the company is administered by a managing director appointed by the General Meeting, chosen from among the associates or not";

That therefore, the fact that the prosecutor had been released from his duties as managing director and that he had received a payoff indemnity does not mean he lost his quality of associate, furthermore the notification of Article

12 of the same Articles only concerns the fact that the latter was statutory manager and that with the decision made, this provision should be modified;

Given that in short, by stating facts as true that are not, the minutes of 05/04/2000 signed on 06/04/2000 constitute an intellectual falsehood;

That therefore, the Court shall declare the offence of forgery held against the defendant as established in fact and in law;

That it is ruled that the offence of forgery is such that when there has been misrepresentation of the truth with the intent to harm or obtain illegal advantages, in a deed to prove in any manner the facts that it pronounces (Cass., 8 January 1940 (Pas.; I, p. 6) in Pierre PIRON and Jacques DEVOS, Op Cit page 329);

That the Court hereby sentences him for this to one year of imprisonment;

Given that adjudicating on the matter of the documents referred to as Sworn Statements of 11/01/2002 and first of all on that which Mr TUKEBA LESSA Clément supposedly signed, the Court notes that under the items of the dossier and public hearing debates received by the prosecutor from the defendant via Mrs ZEZE, the latter's assistant, the sum of USD 20,000 (namely USD 10,000 on 11/01/2002, USD 2,000 on 25/10/2002, USD 500 on 28/11/2002 and USD 8,000 on 02/09/2008);

That in this light, the prosecutor supports that this money was given to him by Mr ALIEU BADARA MOHAMED CONTEH on his promise to ease the suffering they had endured in operating the company particularly when they were apprehended and that it is for this he signed the various releases after each money payment, but he does not acknowledge having signed the sworn statement of 11/01/2002;

That for his part the defendant supports that firstly, USD the 10,000 stated on the sworn statement of 11/01/2002 only constitutes one per cent of the sum paid to the late Master KINKELA (USD 100,000) decreed after negotiations with the prosecutor who was angry at the fact that everything had been paid to the deceased and he was promised that he would sill be paid a further USD 10,000, which he received in instalments on 25/10/2002, 28/11/2002 and 03/09/2008;

That, the Court remarks, it is curious to note that upon reading the said sworn statement of 11/01/2002, it is written that Mr TUKEBA LESSA Clément "acknowledges receiving directly from Mr ALIEU B.M. CONTEH, representative of the company ODESSA CAPITAL, the sum of USD 10,000 as payment for the transferred shares";

That, faced with this contradiction in the defendant's case, the Court only holds the prosecutor's argument in which he states that the USD 20,000 were only a promise made by Mr ALIEU B.M.CONTEH as true;

That this is obvious when reading the terms of the discharges of 23/10/2002, 28/11/2002 and 03/09/2008 which each mention the "promised sum" by the defendant or "agreed to" with him;

That, also as a result of the foregoing, the Court is fully convinced that Mr TUKEBA LESSA Clément never signed this sworn statement;

That indeed, by receiving money that the defendant promised him for other reasons, he could not, as he says, sign this document which mentions rather the payment for the shares transferred by him;

Given that in this regard, the Court shall not accept the experts' report placed in the dossier;

That, this is necessary that the "experts mission is restricted by the terms of the ruling, they have an explicit mandate whose object is clearly defined, and it is not in their power to modify this at their will. Only the judge is authorised to specify the relevant point, which must be to clarify his verdict" (P.A. BELVAUX, *Théorie et pratique de l'experise judiciaire*, Les Editions Scientifiques et Littéraires, Paris, et Comptabilité commercial et finanière, Brussels, 3rd Ed., 1953, page 73);

That, with regard to report No. 205/022/DPS/QGPJ/2012 of 28/07/2012, it was noted that the expert required went beyond what was requested of him by this Court's interlocutory ruling issued on 24/07/2012 in that the expert, in addition to the documents given to him by his ministry, used other documents that he requested from the parties himself;

That he therefore exceeded the terms of the aforesaid ruling;

That, with regard to the report complied by Mr François NKUNA SHINDANI, technician specialised in forensic documents from the Congolese National Police's Forensics Department, it is important to note that in this Court's interlocutory ruling of 21/08/2012 it was the Director of Forensics that was requested;

That unfortunately, it appeared that the said report was made, by another expert requested by the Superintendent of the Criminal Investigation Department of the Public Prosecutor's Office and that, the terms of the Court's ruling were not respected;

Given that in short, the two sworn statements of 11/01/2001 constitute a falsification of the truth and that the signature of its signee was imitated by the defendant, being the only logic to the falsehood fabricated in the minutes of 05/04/2000;

That this falsification of the truth is made on a document, the sworn statement of 11/01/2002, for the purpose of proving that the defendant had received payment for value of his shares;

That this falsification of the truth harmed the prosecutor by depriving him of his shares which he has been forced to retrieve through legal proceedings with all the costs that they incur;

That the defendant acted with fraudulent intent because he wanted to gain an illegal advantage, namely the prosecutor's shares;

That it was ruled that the fraudulence required for the existence of the forgery is the intent to gain illegal profit or advantage for himself or a third party (Cass. 7 October 1957 (Pas. 1958, I, page 99 in Pierre PIRON and Jacques DEVOS, Ibidem);

That therefore, the Court shall declare the offence of forgery held against the defendant as established in fact and in law;

Given that with regard to the second sworn statement of the same date, the Court notes that the signee, Mr KINKELA VI KAN'SI is deceased;

That therefore, only his successor may take this matter to court;

That since the prosecutor is not one of his heirs, the Court will not examine this section of the request;

*Nul ne plaide par procureur.*

Given that therefore regarding the acts of forgery held against the defendant, the Court notes that the falsehood made on the sworn statement of 11/02/2000 is a logical continuation of that made on the minutes of 05/04/2000 or 06/04/2000 which constitutes the key offence;

That therefore, the Court shall only sustain the latter and for which sentences the defendant one year of imprisonment;

Given that by examining the incrimination for use of forgery with regard to the defendant, the Court notes that Article 126 of the Penal Code Book II stipulates: "the person, with fraudulent intent or intent to harm, used a false document or false item, will be punished as if they were the author of the forgery";

That, under this provision to constitute this offence there must be:
- a false document
- use of a false document
- fraudulent intent, by which the criminal agent must be aware that he is using a false document;

Given that in specie, in light of the foregoing, it appears that the minutes of 05/04/2000 as well as the sworn statement supposedly signed by Mr TUKEBA LESSA Clément constitute false documents;

That moreover, considering the public hearing debates and dossier items, it is incontestable that on 25/01/2001, the defendant sent the prosecutor the sworn statement of 11/01/2002 and the accused minutes, thereby crystallising the act of use;

That this clearly appears in the notification of the correspondence sent by bailiff on 25/01/2011 at the request of the company Congolaise Wireless Network SPRL, initiated and followed by its managing director, Mr ALIEU BADARA MOHAMED CONTEH;

That finally, the defendant acted with fraudulent intent;

That this is clear when shown that the false documents were created to deprive the prosecutor of his shares and that they were also used for this purpose;

That therefore, by using these documents, as aforesaid, the defendant knew that they were false;

That, consequently, with all the elements of an offence meet, the Court shall declare the offence of use of forgery established against the defendant as in law and in fact;

That, for this the Court sentences the defendant to one year of imprisonment;

Given nevertheless, the offence of use of forgery is the logical continuation of the forgery made by the latter that although forgery was committed, it was to use it and deprive Mr TUKEBA LESSA Clément from his shares;

That therefore, the Court shall only sentence the defendant to one punishment, namely that of forgery, the key offence and discard that of the use, the ensuing offence;

That in short, the Court shall sentence the defendant to one year of imprisonment for forgery;

That the Court shall order the confiscation for destruction of the minutes of 05/04/2000 and the sworn statement of 11/01/2002 supposedly signed by the prosecutor;

Given that by adjudicating in civil matters, the Court maintains that Mr ALIEU BADARA MOHAMED CONTEH's criminal behaviour caused obvious harm to the prosecutor;

That indeed, the fact that the latter was deprived of his shares for all these years and ensuing loss of earnings, and as forced to undertake legal proceedings to recover the said shares with all the costs this entails, constitutes a clear prejudice that must be repaired in compliance with Article 258 of the Civil Code Book III;

That therefore, the Court shall sentence the defendant to pay the prosecutor the sum of USD 100,000 as damages, payable in the equivalent in Congolese Francs, without taking into account the sum put forward by the prosecutor, which is exorbitant;

Given that the Court notes that at the hearing of 03/07/2012, the defendant having appeared in person at the other hearings, did not come to the court although he was under the legal obligation to appear in person (Article 56 of the PC);

That, it was only during the hearing though his Council, that he produced a document issued by Dr ALASTAIR CLARE stating that he was ill and would be on leave for 18 days;

This situation led the Court to have concern that the defendant would escape the sentence made against him;

Given that the defendant will be sentenced to pay half the court fees reclaimable by 7 days imprisonment should they not be paid within the legal period, and the other half being payable by the prosecutor;

<u>FOR THESE REASONS</u>

The Court;

In light of the Code of Court Organisation and Jurisdiction;
In light of the Penal Proceedings Code;
In light of the Congolese Penal Code;
In light of the Congolese Civil Code Book III;

Publicly and hearing both Mr TUKEBA LESSA Clément and ALIEU BADARA MOHAMED CONTEH;

- Hereby declares admissible but unfounded the request to reopen the debates;

- Hereby declares admissible but unfounded the time limit exemption put forward by the defendant;

- States as established in law and in fact the offence of forgery held against the defendant for the facts borne on the minutes of 05/04/2000 and signed on 06/04/2000;

- Hereby sentences the defendant to one year of imprisonment for the above offence;

- States as established in law and in fact the offence of forgery made against the defendant for the facts borne on the sworn statement supposedly signed by the prosecutor on 11/01/2002;

- Hereby sentences the defendant to one year of imprisonment for the above offence;

- States that latter offence is the logical continuation of the first (forgery presented in the minutes), the key offence;

- Shall only hold one sentence against the defendant, namely that of the key offence being one year of imprisonment;

- States as established in law and in fact the offence of use of forgery held against the defendant;

- Hereby sentences the defendant to one year of imprisonment for the above offence;

- States that the offence of use of forgery is the logical continuation of the first (forgery on the minutes), the key offence;

- Only holds and delivers one sentence against the defendant, namely that of the key offence being one year of imprisonment;

- Hereby orders the confiscation for destruction of the minutes of 05/04/2000 signed on 06/04/2000 and the sworn statement of 11/01/2002 supposedly signed by the prosecutor;

- Hereby sentences the defendant to pay the prosecutor the fair and equitable sum of USD 100,00 as damages payable in the equivalent in Congolese Francs;

- Hereby sentences the defendant to pay half of the present court fees, reclaimable by seven days imprisonment should they not be paid within the legal period, and the other half being payable by the prosecutor;

- Sentences the defendant's immediate arrest;

Ruled and delivered by the GOMBE Magistrates' Court at the public hearing of 06/09/2012 presided by Mr MASUDI MALIMUACHA, Judge, with the support of Mr IDI BIN IDI, Officer of the Public Ministry and Mr MAZIKU MPINDI, Court Registrar;

COURT REGISTRAR                                  JUDGE
*Signature*                                              *Signature*


*Court Stamp and Signature*

**Page 85**

# EXHIBIT D

DEMOCRATIC REPUBLIC OF THE CONGO
THE JUDICIARY
COMMERCIAL COURT OF
KINSHASA/GOMBE

ORDER No. 132/2014 ESTABLISHING THE UNAVAILABILITY OF A CO-MANAGER OF THE PRIVATE LIMITED COMPANY CALLED CONGOLESE WIRELESS NETWORK AND AUTHORIZING A CO-MANAGER TO PERFORM ALONE THE ACTS OF MANAGEMENT AND TO REPRESENT THE COMPANY CONGOLESE WIRELESS NETWORK SPRL WITHIN THE COMPANY VODACOM CONGO (DRC) SPRL.

The year two thousand and fourteen, the fourth day of April;

We, **MBO BOPESAME**, the Acting President of the Commercial Court of Kinshasa/Gombe;

Considering the above petition submitted by the company Réseau des Télécommunications, RESOTEL SPRL in abbreviated form, having its head office at No. 1/C, MPOLO Maurice avenue, in the Municipality of Gombe, registered under number Kin 43.843 in the new Trade Register; filed at the behest of Mr. FERUZI KALUME NYEMBWE, its Statutory Manager, assisted by Counsel Crispin CHIRAGARHULA MPARANYI and Counsel Roger MPANDE NSELE, all of them Lawyers at the Bar of Kinshasa - Gombe, and residing on 4th floor, Gécamines building (ex-SOZACOM), Kinshasa/Gombe;

Considering the documents annexed thereto;

Whereas the petition of the company Réseau des Telecommunications, RESOTEL SPRL in abbreviated form, seeking to obtain from the President an order:

- Finding against and prohibiting Mr. ALIEU BADARA MOHAMED CONTEH from performing any acts in the name and on behalf of the Company CONGOLESE WIRELESS NETWORK SPRL;
- Prohibiting Mr. ALIEU BADARA MOHAMED CONTEH from representing the company CONGOLESE WIRELESS NETWORK SPRL within the Management and Administration bodies of VODACOM CONGO (DRC) SPRL;
- Allowing, on the other hand, the co-manager FERUZI KALUME NYEMBWE to perform alone the acts of management in the interest of the company

CONGOLESE WIRELESS NETWORK SPRL, and to represent the latter alone within the company VODACOM CONGO (DRC) SPRL
- Finding that the decision to be delivered shall be immediately enforceable notwithstanding any appeals
- Costs and expenses as legally required.

And justice will be served.

Whereas in its claims, the petitioner states:

It is an associate in the company CONGOLESE WIRELESS NETWORK, CWN SPRL in abbreviated form, at the rate of 40% for itself and 60% for the company African Wireless Incorporation;

That the Company CONGOLESE WIRELESS NETWORK SPRL is currently managed jointly by two co-managers, i.e. Mr. FERUZI KALUME NYEMBWE and Mr. MOHAMED ALIEU BADARA CONTEH;

That the Company CONGOLESE WIRELESS NETWORK SPRL is in turn an associate in the company VODACOM CONGO (DRC) SPRL at the rate of 49% for it and 51% for VODACOM INTERNATIONAL LIMITED;

That following a criminal trial where he was involved against Mr. TUKEBA LESSA KIMPUNI Clément before the magistrate's court of Kinshasa/Gombe under RP 22.596/CD/II, Mr. ALIEU BADARA MOHAMED CONTEH was sentenced to 12 months imprisonment for forgery;

That to date, this judgment has acquired the force of res judicata following the ruling under RP 4082 of the Supreme Court of Justice dated 21 October 2013;

That this final criminal conviction immediately caused Mr. ALIEU BADARA MOHAMED CONTEH to vanish as to try to avoid the enforcement of the said court decision, thus seriously compromising the joint management of the company CWN SPRL and affecting the chairmanship of the board of management of the company VODACOM CONGO (DRC) SPRL;

That in other words, such a situation seriously undermines the functioning and the exercise of the commercial activity of the Company CONGOLESE WIRELESS NETWORK SPRL on the one hand, and the management of its interests in the company VODACOM CONGO (RDC) SPRL on the other hand;

That the company CONGOLESE WIRELESS NETWORK is currently unable to convene the Special Meeting to decide on the matter;

That in **law**, Article 10 paragraph 3 of the Uniform Act relating to General Commercial Law provides that *"no person shall engage in a commercial activity, either directly or through an intermediary, if he or she is subject to a final custodial sentence for an ordinary law crime ..."*

That in the same vein, commenting on mandatory prohibitions provided for in Article 10 paragraph 3 mentioned above, Professor Beauclair NJOYA NKAMGA teaches: *"the mandatory prohibitions cover a double hypothesis. The first consists of automatic prohibitions established in the Decree Law of 08/08/1935 and included in 10 paragraph 3 of Article of UAGCL, and does not require a special order against the offender..."* (Read Beauclair NJOYA NKAMGA, *l'administration provisoire des sociétés dans l'espace OHADA,* collection Economia, édition Veritas, 2012, page 99 point 159).

That the same author points out: *"like the Decree-Law of 08/08/1935, the UAGCL attaches the prohibition of managing companies to the pronouncement of some sentences: a final custodial sentence for ordinary law crimes..."* (Read Beauclair NJOYA NKAMGA, *op.cit.* page 99, point 160).

That therefore, the prohibition of managing automatically resulting from a custodial sentence in the OHADA law has as text base Article 10 paragraph 3 of the Uniform Act relating to General Commercial Law.

That in this instance, there is no need establishing that Mr. ALIEU BADARA MOHAMED CONTEH, co-manager of the company CWN is subject to a final custodial sentence for an ordinary law crime, in this case to 12 months imprisonment for forgery.

That given the extreme urgency, considering that there is danger in delay, this petition will be granted and the decision to be delivered shall be immediately enforceable;

Whereas, in support of its allegation, the petitioner included in the file exhibits marked and initialed from 1 to 210 and composed of statutes of CWN Sprl, statutes of RESOTEL SPRL, Special Meeting

of 21/02/2014 of RESOTEL, filing acts of March 12, 2014, judgment of the Commercial Court of Kinshasa/Gombe under 2236 of February 22, 2012, judgment under RP 22.596/CD/II of the Magistrates' Court of Kinshasa/Gombe of September 06, 2012, order RP 4082 of the Supreme Court of Justice of October 21, 2013 and the Official Gazette of the Democratic Republic of Congo No. 6 of 15 March 2014.

Whereas it should be noted in law that Article 10 of the Uniform Act relating to General Commercial Law provides that:

"No person shall engage in a commercial activity, either directly or through an intermediary, if he or she is subject to:
 – A permanent or temporary general prohibition imposed by a court of one of the States Parties; whether this prohibition is imposed as the principal or an additional sentence;

 – A prohibition imposed by a craft jurisdiction; in such a case, the prohibition only applies to commercial activity concerned;

 – A final custodial sentence for an ordinary law crime, or at least a three month imprisonment sentence without suspension for an offense against property or an offense in economic or financial matters."

Whereas according to the above provision of the Uniform Act relating to General Commercial Law, a person or a manager may be disqualified or prohibited to carry on commercial activity or manager's duties under the conditions laid down in that act.

That it is in this vein that paragraph 3 of the article mentioned above lays down the principle of prohibition from managing a commercial company if sentenced to custody.

That in other words, the manager of a commercial company, in this case a limited liability company, sentenced to custody for an ordinary law crime should be prohibited to manage or administer a commercial company.

That Article 10 paragraph 3 of the Uniform Act relating to General Commercial Law lays down the principle of automatic prohibition from managing or administering a commercial company in case of a sentence to custody for an of ordinary law crime;

Whereas as so eloquently recalled by the petitioner, Professor Beauclair NJOYA NKAMGA, commenting on Article 10 paragraph 3 of the Uniform Act relating to General Commercial Law, teaches that the mandatory or automatic prohibitions under this provision do not require a special order against the offender to be prohibited from managing or administering a commercial company;

That otherwise, the sentence to custody itself is sufficient to prohibit an offender or even a convicted person from managing or administering a commercial company;

Whereas in the case under consideration, the conviction of ALIEU BADARA MOHAMED CONTEH, then co-manager of CONGOLESE WIRELESS NETWORK SPRL, is clearly established by the judgment under RP 22.596/CD/II of September 06, 2012, the ruling under RP 4082 of the Supreme Court of Justice of October 21, 2013 and implementing acts including the Official Gazette No. 6 of March 15/03/2014 in its pages 164 and seq. are expressive as to the matter.

That therefore, Mr. ALIEU BADARA MOHAMED CONTEH shall be prohibited from managing and administering the company CONGOLESE WIRELESS NETWORK SPRL and from representing it within the company VODACOM CONGO (DRC) SPRL.

Whereas, moreover, that Article 328 of the Uniform Act relating to Commercial Companies and Economic Interest Groups provides: *"As regards the relationship among associates and where their powers are not determined by the statutes, the manager can perform all management acts in the interests of the company. In case of plurality of managers, the latter shall separately hold the powers provided for under this article, except the right of everyone to oppose any transaction before it is completed. The opposition of a manager against any acts of another manager has no effect against third parties, unless it is established that they were aware of it."*

According to this provision, in case of plurality of managers, each manager has the authority to act individually in the name and on behalf of the company, except the right of the co-manager to oppose any acts performed by his or her colleague before fulfillment thereof;

Whereas in the case under consideration, there is no doubt that the company CONGOLESE WIRELESS NETWORK is jointly managed by Mr. ALIEU BADARA MOHAMED CONTEH and Mr. FERUZI KALUME NYEMBVVE;

Being prohibited from managing or administering, Mr. MOHAMED ALIEU BADARA CONTEH could neither oppose nor prevent the co-manager FERUZI KALUME NYEMBWE from carrying out any transaction or from performing any act of management in the interests of the company CONGOLESE WIRELESS NETWORK SPRL;

That it is appropriate to notice or even to allow the co-manager FERUZI KALUME NYEMBWE to perform alone the acts of management in the interests of the company CONGOLESE WIRELESS NETWORK and to represent the latter alone within the company VODACOM CONGO (DRC) SPRL;

Moreover, that considering the total paralysis observed in the functioning of the company CONGOLESE WIRELESS NETWORK SPRL because of serious disagreement between associates on the one hand, and the current consequent difficulty for the latter to hold a Special Meeting on the other hand, it should be noted that there is urgency to rule on this petition;

That in other words, the "danger in delay" is well established, as it is true that the company CONGOLESE WIRELESS NETWORK SPRL must be able to achieve its corporate purpose and especially to honor its commitments vis-à-vis third parties and the Congolese State;

That by way of consequence, urgency is recommended in the proceedings of this case and this order shall be immediately enforceable notwithstanding any appeals;

That therefore,

Given the Code of Civil Procedure;
Given articles 328 and seq. of the Uniform Act relating to Commercial Companies and Economic Interest Groups;
Given Article 10 paragraph 3 of the Uniform Act relating to General Commercial Law; we find the petition admissible and well-founded;

By way of consequence, we hereby
   – **prohibit** Mr. ALIEU BADARA MOHAMED CONTEH from performing any acts in the name and on behalf of the Company CONGOLESE WIRELESS NETWORK SPRL, CWN in abbreviated form;
   – **Prohibit** Mr. ALIEU BADARA MOHAMED CONTEH from representing the company CONGOLESE WIRELESS NETWORK SPRL

within the Management and Administration bodies of VODACOM CONGO (DRC) SPRL;

– **Authorize** the co-manager FERUZI KALUME NYEMBWE to perform alone acts of management in the interests of the company CONGOLESE WIRELESS NETWORK SPRL, and to represent alone the Company CONGOLESE WIRELESS NETWORK SPRL within the company VODACOM CONGO (DRC) SPRL, pending the General Meeting of the Company CONGOLESE WIRELESS NETWORK SPRL

– **Declare** this order immediately binding and notwithstanding any appeal;

– **Charge** the petitioner for the procedural costs

Thus ordered in Kinshasa, in our chamber on the day, month and year aforementioned.

**Acting President**
**MBO BOPESAME**

1

2 **PROOF OF SERVICE**

3 STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4     I am a resident of the State of California, County of Los Angeles; I am over the age of eighteen

5 years and not a party to the within action; my business address is 15260 Ventura Blvd., Suite 1810,

6 Sherman Oaks, CA 91403.

7

8     I, Eliel Chemerinski, I served the within **DEFENDANT ALIEU B. M. CONTEH'S NOTICE**

9 **OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441 AND 1446**

10 **(DIVERSITY) & CIVIL COVER SHEET** in these proceedings on the opposing party in the said

11 action:

12

13 1) by overnight delivery- by delivery to an express service carrier a true copy thereof, enclosed in a

14 sealed envelope, with fees for overnight delivery fully prepaid or provided for and addressed as follows:

15

16 HANDALL & ASSOCIATES
Attn: Anton Handal, Esq.

17 750 B. Street, Suite 2510
San Diego, CA 92101

18

19     I declare under penalty of perjury under the laws of the United States of America that the

20 foregoing is true and correct. Executed on August 14, 2014, at Sherman Oaks, California.

21

22

23 _____
Eliel Chemerinski

24

25

26

27

28

ELIEL CHEMERINSKI
Attorney at Law
15260 VENTURA BLVD., SUITE 1810
SHERMAN OAKS, CA 91403
(818) 990-9977

05266.076/348451v1

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| James R. Lindsay; Lindsay Family Trust; William Buck Johns; Wymont Services Limited; and Marc van Antro all acting Derivatively on Behalf of Nominal Defendant African Wireless Inc. | Alieu B. M. Conteh; Odessa Capital Inc.; Dominique Financial Ltd., OOA ONE, LLC., OOA TWO, LLC., African Wireless Inc. (as a nominal defendant); and DOES 1-10 |

| (b) County of Residence of First Listed Plaintiff   Orange | County of Residence of First Listed Defendant   South Africa |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| Handal & Associates<br>Anton Handal<br>750 B Street, Suite 2510<br>San Diego, CA 92101 | Eliel Chemerinsi, Esq.<br>15260 Ventura Blvd., Suite 1810<br>Sherman Oaks, CA 91403<br>(818) 990-9977 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $ -

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Shareholder Derivative Complaint- Causes of Action: Preliminary Injunction and TRO; Removal of Diector; Breach of Fiduciary Duty; Unjust Enrichment; Accounting;
Declaratory Relief; ; Constructive Trust

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | SACV14-01296 DFM | |
|---|---|---|---|
| CV-71 (06/14) | | CIVIL COVER SHEET | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes ☐ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☒ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☒ Yes ☐ No | ☐ Yes ☐ No |
| If "yes," your case will initially be assigned to the<br>**SOUTHERN DIVISION.** | If "yes," your case will initially be assigned to the<br>**EASTERN DIVISION.** |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Southern Division |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any cases previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**                           DATE: 8/14/2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |